**Ari Yehuda UNGER, Plaintiff,**

v.

**Lawrence COHEN, Jeffrey Freedman and the City of New York, Defendants.**

**No. 86 CIV. 5048 (SWK).**

United States District Court,
S.D. New York.

July 27, 1989.

Leon Friedman, New York City, for plaintiff.

Peter L. Zimroth, Corp. Counsel of City of New York by Robert Trachtenberg, Asst. Corp. Counsel, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff brings this action for damages against two police officers and the City of New York for alleged violations of 42 U.S.C. § 1983 for false arrest and imprisonment, for use of excessive force and for related violations of state law. Discovery in this matter has closed, and defendants have moved for partial summary judgment pursuant to Fed.R.Civ.P. 56 as to the state and federal claims for false arrest and imprisonment on the grounds that such claims are barred by plaintiff's plea of guilty to disorderly conduct. Plaintiff acknowledges his plea of guilty, but argues that his plea was not voluntary and should not bar his claims for false arrest and imprisonment.

## BACKGROUND

Plaintiff was arrested by officers Cohen and Freedman on July 1, 1985 for Assault in the Second Degree, Assault in the Third Degree, Resisting Arrest and Disorderly Conduct. Though the circumstances of the arrest are not precisely clear, Unger explains that Officer Freedman, who was accompanied by Officer Cohen, had told him to move the car parked in front of Unger's place of business. Unger Deposition at 29, attached as Exhibit A to Affidavit of Leon Friedman. Unger told the officers that the car was not his, and the officer left. When Freedman and Cohen returned, Freedman again instructed Unger to move the car, and Unger again told him that the car was not his. Freedman then asked to see Unger's license, which Unger did not have in his immediate possession. The officers proceeded to arrest him by grabbing him, throwing him against the side of the patrol car and handcuffing him from behind. *Id.* at 31–33. Freedman stated at his deposi-

tion that Unger began shouting obscenities prior to his arrest. Freedman Deposition at 47, attached as Exhibit 2 to Trachtenberg Affidavit. The officers then took Unger to the 44th Precinct. The circumstances of his trip to the police station are also in dispute, with Unger claiming that the officers travelled a circuitous route in order to delay his arrival such that he would necessarily spend the night in jail. The facts surrounding his trip to the precinct and his treatment there are not directly relevant to this motion, however, which concerns only Unger's claims stemming from the alleged false arrest and imprisonment.

Unger, who had not been arrested previously, spent the night in jail, and was arraigned the next morning before the Honorable Ronald Garnett, Justice of the Supreme Court of New York. Unger claims that he was not allowed to phone an attorney or anyone else while he was in custody, despite repeated requests. Unger Deposition at 41–44. He also refused to eat or drink. After spending the night in jail, in conditions Unger considered horrifying, he met with a public defender from the Legal Aid Society, Alma Cordova. She instructed him to plead guilty to "whatever the judge says". *Id.* at 44. At the arraignment, Cordova stated that she was appearing for the arraignment only. Transcript ("Tr.") at 2 (attached as Exhibit 5 to Trachtenberg Affidavit). She then informed the court that Unger intended to plead guilty to disorderly conduct as a violation to cover all the charges. Unger declined to make any comment to the judge before sentencing, and the judge sentenced him to a conditional discharge, with the record to be sealed upon completion of the discharge. Tr. at 3. The court instructed counsel to advise Unger of his right to appeal, and she handed him written notice of his right to appeal. Unger did not appeal, however.

## DISCUSSION

Defendants argue that plaintiff cannot maintain an action for false arrest or imprisonment, or a section 1983 action based

on that false arrest, since Unger plead guilty to disorderly conduct. Plaintiff agrees that a valid, voluntary plea of guilty to a criminal charge would preclude a later action, based on that charge, for false arrest or violation of section 1983 based on false arrest.

█ A claim of false arrest is premised on a lack of probable cause for the arrest. *Cameron v. Fogarty,* 806 F.2d 380, 386 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987); *Parker v. Hearn,* 695 F.Supp. 1421, 1424 (E.D.N.Y. 1988) (plaintiff cannot recover for false arrest civil rights claim if probable cause to arrest is established); *Broughton v. State,* 37 N.Y.2d 451, 373 N.Y.S.2d 87, 95, 335 N.E.2d 310, *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975). Since conviction is viewed as establishing the existence of probable cause, *Cameron, supra,* 806 F.2d at 387 (citations omitted), "the plaintiff can under no circumstances recover [for false arrest] if he was convicted of the offense for which he was arrested." *Id.* (citations omitted) (discussing New York law). The Court of Appeals explained that proof of conviction provides a complete common law defense to a false arrest claim.[1] This same "conviction defense" is available against section 1983 claims premised on false arrest. *Id.* at 388; *see Keyes v. City of Albany,* 594 F.Supp. 1147, 1155 (N.D.N.Y.1984) (dismissing § 1983 action based on false arrest since plaintiff plead guilty to disorderly conduct).[2]

█ Plaintiff contends that the defense is not available in this case since his plea was not voluntary. Plaintiff is correct that an invalid judgment of conviction would not support the defense. *See Pouncey v.*

*Ryan,* 396 F.Supp. 126, 127 (D.Conn.1975) (*valid* conviction precludes subsequent false arrest suit); Restatement (Second) of Torts § 667(1) ("conviction of the accused ... conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means"), *cited in Cameron, supra,* 806 F.2d at 387. Plaintiff may thus rebut the defense by establishing that the conviction is invalid. In the present case, plaintiff may avoid summary judgment by demonstrating that genuine issues of material fact exist as to the validity of the conviction such that defendant is not entitled to judgment as a matter of law. *See* Fed.R. Civ.P. 56(c).

█ Defendants argue first, that plaintiff cannot attack his conviction here without initially exhausting state remedies and filing a writ of habeas corpus, and second, that the plea was voluntary. Defendants' first argument is without merit. The habeas corpus statute, 28 U.S.C. § 2254, requires a petitioner to have exhausted all federal constitutional claims at the state level before seeking collateral relief. Defendants, however, overlook the fact that Unger is not incarcerated, or otherwise "in custody"; consequently, habeas relief is not available to him. 28 U.S.C. § 2254(a) (limiting remedy to those persons "in custody" at time petition is filed); *see Maleng v. Cook,* ── U.S. ──, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989) (per curiam) (person whose sentence has fully expired at time petition is filed is not "in custody" even though collateral consequences flow from prior conviction). It follows that the exhaustion requirement imposed in the habeas context is not present here. 28 U.S.C. § 2254(b) (exhaustion requirement); *see*

---

**1.** Other circuits have criticized the conclusions and policy assumptions of *Cameron. See Rose v. Bartle,* 871 F.2d 331, 350–51 (3d Cir.1989); *Brown v. Edwards,* 721 F.2d 1442, 1448 n. 8 (5th Cir.1984).

**2.** This Court, in the past, and courts in other jurisdictions have analyzed the issue in terms of collateral estoppel, rather than in terms of a common law defense, ruling that a conviction, by plea or trial, collaterally estops a plaintiff from relitigating the existence of lack of exist-

ence of probable cause, on the theory that his guilt has been conclusively established. *See Camarano v. City of New York,* 646 F.Supp. 246, 248–49 (S.D.N.Y.1986). The Second Circuit did not rule that this approach is inappropriate, but held that in addition to collateral estoppel, a section 1983 defendant may resort to the common law conviction defense for protection. *Cameron, supra,* 806 F.2d at 386. Defendant in this action has relied only on the conviction defense.

*Smith v. Springer,* 859 F.2d 31, 35 (7th Cir.1988) ("exhaustion requirement relates only to habeas corpus petitions and not to section 1983 claims"). The cases cited by defendants involved *incarcerated* plaintiffs. *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Meadows v. Evans,* 529 F.2d 385 (5th Cir.1976), *aff'd en banc,* 550 F.2d 345 (5th Cir.1977), *cert. denied,* 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977); *Matos v. Quealy,* 524 F.Supp. 15 (S.D.N.Y.1981); *Carter v. Newburgh Police Dept.,* 523 F.Supp. 16 (S.D.N.Y.1980). The Supreme Court has stated that if "a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus.... [A] damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of exhaustion of state remedies." *Preiser, supra,* 411 U.S. at 494, 93 S.Ct. at 1838. Since plaintiff here is not "challenging the very fact or duration of his physical imprisonment", *id.* at 500, 93 S.Ct. at 1841, habeas relief is neither available nor a prerequisite to bringing a section 1983 action, and exhaustion of state remedies is not required.

■ Having decided that habeas relief is unavailable, the Court notes that plaintiff nonetheless attacks the validity of his conviction. Plaintiff neither appealed his guilty plea conviction nor sought collateral habeas relief.[3] Plaintiff nonetheless has the right to rebut defendant's proffered "conviction" defense by demonstrating to the Court, in furtherance of his civil rights claim, that the guilty plea was invalid and thus does not conclusively establish the existence of probable cause for his arrest. *See Smith, supra,* 859 F.2d at 35 (plaintiff may challenge pre-conviction police conduct even though plaintiff was convicted and served sentence). Indeed, if plaintiff were denied the opportunity to challenge the va-

lidity of his plea in this forum, a false arrest followed by an invalidly obtained plea could go unremedied. *Cf. Haring v. Prosise,* 462 U.S. 306, 318, 103 S.Ct. 2368, 2375, 76 L.Ed.2d 595 (1983) (redetermination of issues, even though raised and decided by state court, may be warranted "if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation") (quoting *Montana v. United States,* 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979)). Since exhaustion of state remedies is not required, a person who is falsely arrested and then convicted based on an invalid guilty plea may seek money damages, though not release from custody, directly in federal court.

Plaintiff's argument is as follows:

Granted this is not a case where a defendant was held for many days in a police station and deprived of food or water while the police pressured him to confess. But a law abiding citizen, arrested for failure to show identification over a parking ticket, held overnight in a jail cell with drug addicts, where he was abused and could not sleep and told by a Legal Aid lawyer that he can walk out the door immediately if he pleads guilty to a violation, is subject to the type of pressure that renders his plea involuntary.

Plaintiff's Memorandum at 5. Plaintiff also argues that the plea procedure was faulty in that the "court, hearing the case at an arraignment part immediately after the events in question, after defendant had no chance to call his lawyer the night before, never addressed the defendant, never asked the defendant if his plea was voluntary or correct, never asked for the factual basis for the plea, but simply accepted the lawyer's statement that the defendant was pleading to disorderly conduct." *Id.* at 6.

■ The Supreme Court has recognized that the guilty plea and plea bargaining process are important elements of our criminal justice system. *Allyn v. Comm.*

---

**3.** It is not clear that plaintiff ever was "in custody" such that habeas relief would have been available.

of Corr. Services, 708 F.Supp. 592, 593 (S.D.N.Y.1989) (citing Blackledge v. Allison, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977)). The Court will not overturn a guilty plea on due process grounds if the plea was made as a voluntary and intelligent choice among the alternative courses of action available. Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (citations omitted); United States v. Muench, 694 F.2d 28, 34 (2d Cir.1982), cert. denied, 461 U.S. 908, 103 S.Ct. 1881, 76 L.Ed.2d 811 (1983); Kelleher v. Henderson, 531 F.2d 78, 81 (2d Cir.1976) (citing North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)). When a defendant is represented by counsel and enters a guilty plea on the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, supra, 474 U.S. at 56, 106 S.Ct. at 369 (quoting McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). To prove ineffectiveness of counsel, plaintiff must demonstrate first that his counsel acted unreasonably in light of prevailing professional standards, and second, that this deficient conduct actually prejudiced. Hill, supra, 474 U.S. at 57–58, 106 S.Ct. at 369–370 (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In the context of a guilty plea, plaintiff satisfies the "prejudice" requirement by demonstrating a reasonable probability that he would not have plead guilty and would have gone to trial in the absence of the ineffective conduct of counsel. Id. 474 U.S. at 59, 106 S.Ct. at 370. Whether or not the ineffective assistance of counsel thus "prejudiced" Unger is to be determined by reference to an objective standard. Miller v. Angliker, 848 F.2d 1312, 1323 (2d Cir.), cert. denied, — U.S. —,

109 S.Ct. 224, 102 L.Ed.2d 214 (1988). Plaintiff here must overcome the presumption that counsel provided effective assistance. Kimmelman v. Morrison, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986).[4]

█ The only evidence before the Court concerning counsel's representation comes from Unger's deposition and the plea record. According to his deposition, Unger was not allowed to contact the counsel of his choice. After spending a night in jail, a Legal Aid attorney met with him briefly at the courthouse, whose advice was to plead guilty to whatever the judge said. Unger states that his only concern at the time was to avoid returning to jail. Neither counsel nor the judge mentioned the possibility of bail.

The Court has reviewed the sparse minutes of the plea proceeding. Plaintiff's characterization of the proceeding as "assembly-line justice" is certainly appropriate. Counsel for Unger waived the reading of the charges, the reading of Unger's rights, and the allocution on the guilty plea.[5] The only time the court addressed Unger was to ask him if he had anything to say prior to imposition of sentence. Unger indicated that he did not. The record indicates that the judge, counsel and Unger had a discussion off the record. This discussion occurred immediately before Unger's counsel indicated his intention to plead guilty, and the substance of that conversation is not known.

From the record before the Court, it appears that counsel did not discuss the charges in detail nor the circumstances of plaintiff's arrest. The record does not indicate an admission of factual guilt on Unger's part; Unger's counsel merely informed the court after the side bar conference that her client intended to plead guilty. It is fairly evident that counsel was

---

4. Proof of ineffective assistance of counsel is not the exclusive means to challenge a plea of guilty. In Miller, supra, the Court of Appeals held that a guilty plea, even if "knowing" and "intelligent", would not be valid if the prosecutor failed to reveal material evidence. Id. at 1320. Thus, a failure of process can invalidate what would otherwise be a valid plea.

5. If this plea had been taken in federal court, Fed.R.Crim.P. 11 would have required an extensive allocution. Rule 11, however, does not represent the constitutional minimum and is not binding on the state courts. Gaddy v. Linahan, 780 F.2d 935, 943 n. 8 (11th Cir.1986).

able to negotiate a conditional discharge for Unger, but absent some indication that Unger knew he was admitting wrongdoing, the Court believes it manifestly unfair to assume that he understood the consequences of the plea. Although Unger may have known that by allowing his attorney to enter a guilty plea he was in fact admitting his own criminal conduct, it is equally possible that he had no real idea what was happening and only understood that his appointed counsel was arranging for him to leave jail and not have to return.

The Court concludes that summary judgment in favor of defendants is not appropriate on the record now before the Court. First, the Court is not satisfied that plaintiff received effective assistance of counsel. Plaintiff claims that his plea was not voluntarily and intelligently made because of the coercive setting, the trauma he was experiencing and his lack of full understanding of the situation. Absent effective representation by counsel, and the considered judgment of the defendant in light of that representation, the conviction based on the plea is circumspect and does not constitute a defense to the false arrest claims. Counsel's actions are to be evaluated in light of all the circumstances surrounding the proceeding. *Kimmelman, supra,* 477 U.S. at 381, 106 S.Ct. at 2586. Counsel is under an obligation to investigate possible defenses and must "advise his client of available options prior to a guilty plea so that the client's plea may be informed, knowing and voluntary." *United States ex rel. Salisbury v. Blackburn,* 792 F.2d 498, 499 (5th Cir.1986) (citing *Boykin v. Alabama,* 395 U.S. 238, 240, 89 S.Ct. 1709, 1710, 23 L.Ed.2d 274 (1969)).

The evidence suggests that counsel may or may not have adequately discussed the case with her client, and may or may not have informed him of the consequences of the plea or the fact that the plea involved an admission of criminal wrongdoing. Counsel did not suggest the possibility of bail or other measures short of a guilty plea to secure defendant's release. The record does not indicate that counsel made any investigation into the facts of the case. Counsel also did not indicate that Unger had not eaten since being arrested, that he was traumatized or that he believed he had been falsely arrested and wrongly abused. Counsel also waived all of defendant's rights, without any indication in this record that she did so after consulting her client. Counsel thus waived the procedures by which Unger was to understand more fully what was occurring. In light of these facts, the Court finds that judgment in favor of defendants on this issue is not appropriate. Due process requires that the record affirmatively disclose that a guilty plea was entered voluntarily and intelligently. *Salisbury, supra,* 792 F.2d at 499. The record does not so indicate here.

The lack of an allocution by the state judge, and counsel's willingness to waive one, is not insignificant. Although a defendant may waive rights through counsel, the court must be satisfied that the defendant has done so voluntarily. The facts of this case demonstrate that a complete waiver of allocution is ill-advised. A record devoid of an allocution makes review particularly difficult, and in the absence of other evidence, the silent record calls the fundamental fairness of the plea proceeding into question. *Boykin v. Alabama,* 395 U.S. 238, 244, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *People v. Harris,* 61 N.Y.2d 9, 471 N.Y. S.2d 61, 64, 459 N.E.2d 170 (1983). New York state courts generally require, as a matter of federal constitutional law, that the judge accepting a guilty plea conduct some form of colloquy. *Harris, supra,* 471 N.Y.S.2d at 65–6, 459 N.E.2d at 170–1. The presence of an allocution in the record undermines a defendant's claim of ineffective assistance of counsel. *See, e.g., United States v. Fairchild,* 803 F.2d 1121, 1123 (11th Cir.1986); *Pendleton v. Scully,* 664 F.Supp. 100, 103 (S.D.N.Y.1987). The manner in which Unger was processed—being held overnight, denied the right to contact his own counsel, meeting only briefly with appointed counsel, spending at most a few minutes before a judge unfamiliar with the facts of the case who did not allocute or elicit any statements from defendant—calls the fairness of the entire procedure into question. Although any single factor may

not violate due process, the sum smacks of unfairness. Thus, absent an affirmative showing in the record that Unger received the type of effective assistance of counsel which he is due, the Court will not dismiss plaintiff's false arrest claims on the presumption that his guilty plea established irrebuttably the presence of probable cause.

In order to challenge the effectiveness of counsel, plaintiff must also establish that he would not have plead guilty but for the errors made. The Court concludes on this record that if Unger had received effective assistance of counsel he would not have reasonably entered the guilty plea. A better understanding of the consequences of the plea and that the plea involved a conclusive finding of criminal conduct under these circumstances would have motivated Unger not to enter the plea, at least in the manner it was done and without consulting his own counsel. Unger has thus satisfied on this record the "prejudice" requirement.

## CONCLUSION

For the reasons stated above, the Court denies defendants' motion for partial summary judgment.

SO ORDERED.