**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 17-1143

---

DAVID FIELDS,

Appellant

v.

CITY OF PITTSBURGH, a municipal corporation;
CHRISTOPHER GOETZ, as an individual;
JEFFREY W. LABELLA, as an individual;
RICHARD REILLY, as an individual;
JOHN DOE, as an individual

---

On Appeal from the United States District Court for the
Western District of Pennsylvania
(D.C. No. 2:14-cv-01311)
District Judge: Hon. David S. Cercone

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 12, 2017

Before: CHAGARES, JORDAN, and FUENTES, Circuit Judges.

(Filed October 26, 2017)

---

OPINION*

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Plaintiff David Fields ("Fields") appeals from the decision of the District Court granting summary judgment in favor of the defendants on Fields' claims under 42 U.S.C. § 1983 for false arrest, Fourth Amendment excessive force, and conspiracy, and the District Court's decision declining to assert supplemental jurisdiction over his state law claims. For the reasons stated below, we will affirm.

## I.[1]

Fields is the owner of a car dealership located adjacent to a daycare center owned by his wife. On July 8, 2013, Fields' wife called the City of Pittsburgh Police to report a vehicle that was improperly parked in the daycare center's loading zone, located across the street from the Fields' businesses. At the time, Fields had parked his own van on the sidewalk in front of their businesses to unload supplies for the daycare center. When Officer Connelly arrived, he noted Fields' van, was told that it was there to unload supplies, and assented to its presence so long as Fields unloaded quickly. Defendant Officers Labella and Goetz then arrived on the scene and Labella told Fields that he had to move the van. Fields agreed to do so, but explained that Labella would first need to move his cruiser, which was blocking the van. Labella replied "you don't tell me what to

[1] We write only for the parties and therefore recount only those facts necessary to our disposition. As this appeal follows a motion for summary judgment, the Court recounts the facts in the light most favorable to Fields and accords him "every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000).

do" and after Fields repeated that he would move once the cruiser was moved, Labella replied "oh, you're an asshole, huh? We'll just F'ing tow it." Appendix ("App.") 3.

Fields began recording Labella with his cellphone camera. The video shows Labella returning briefly to his cruiser, then walking directly up to within a few feet of Fields who was standing at his van and training his camera on Labella. Labella can be heard saying "you better get that camera out of my face," at which point the video cuts out. Fields asserts that Labella slapped him in the face, knocked the phone out of his hands, and then held him by the collar. However, Fields explained in his deposition that the encounter was brief and that Labella "didn't grab me and, like, just keep holding me . . . . It was a slap, grab up, and then he let me go." ECF # 81-1 at 15.

Visibly outraged by his treatment, Fields can be seen in a second video that began a short time later complaining to Lieutenant Reilly — who was seated in his car — that Labella had assaulted him. As Reilly moved his car a few feet forward to park, Fields was left standing a foot or two from Labella, yelling "you assaulted me, you assaulted me" while gesturing towards Labella's face. Fields then walked towards Reilly, who was exiting his car; Labella followed a few feet behind Fields. At this point, Fields was standing in front of Reilly, with Labella and a third officer on either side of him. Fields turned towards Labella and, with his fists balled at his side, made "two quick moves" towards him. App. 5. Labella, Goetz, and the third officer then converged on Fields to handcuff and arrest him, and Reilly can be heard on the recording telling Fields "you can't do that." Fields was told to put his hands behind his back, but at least initially held them in front of his body. The officers succeeded in handcuffing only one of Fields'

wrists and at some point Labella used a Taser on Fields, who was then pushed against a fence and handcuffed. Fields was charged with two counts of aggravated assault, one count of obstructing the administration of law, and one count of resisting arrest; he pleaded guilty to reduced charges of two counts of harassment and one count of disorderly conduct. Id. at 9.

On September 24, 2014, Fields filed suit against the City of Pittsburgh and Officers Labella, Goetz, Reilly, and "Doe," asserting claims under 42 U.S.C § 1983 for violations of his First and Fourth Amendment rights, Monell claims, and state law tort claims. After the District Court denied without prejudice defendants' partial motion to dismiss, defendants filed the instant motion for summary judgment. In response, Fields withdrew his claims against Reilly and "Doe," as well as his First Amendment and Monell claims. Id. at 1. On December 16, 2016, the District Court granted defendants' motion, finding that Fields' false arrest claim was barred by Heck v. Humphrey, 512 U.S. 477 (1994), that the officers' conduct did not violate the Fourth Amendment, and in any event that the officers were entitled to qualified immunity. Id. at 9, 14, 16. The District Court declined to assert supplemental jurisdiction over Fields' state law claims. Fields timely appealed.

## II.[2]

Fields challenges the District Court's determinations that (1) because he pleaded guilty to various offenses arising from the incident, his false arrest claim is barred by

[2] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

Heck, and (2) neither Labella's initial slap, nor the subsequent Tasing and arrest, violated Fields' Fourth Amendment rights. We exercise plenary review over a district court's grant of summary judgment. Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010).

A.

To succeed on a claim of false arrest, a plaintiff must show "that the police lacked probable cause to arrest" him. Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995). We have noted that "it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with," because "[p]robable cause need only exist as to any offense that could be charged under the circumstances." Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (quoting Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)). Although Fields pleaded to lesser offenses than he was originally charged with, his guilty plea inherently included an acknowledgement that probable cause existed to arrest him for some offense. In Heck, the Supreme Court ruled that "a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." Gilles v. Davis, 427 F.3d 197, 208–09 (3d Cir. 2005). As applied here, Fields' success on his false arrest claim depends on a finding that the officers lacked probable cause to arrest him, which would directly "impugn[] the validity" of his resulting guilty plea. Because his guilty plea has not been invalidated, Heck bars Fields' false arrest claim.

We are not persuaded by Fields' arguments that Heck should not apply, all of which rely on the claim that Labella made false statements in his affidavit of probable

cause, and which Fields faults the District Court for ignoring. As an initial matter, the District Court rejected these arguments, in part because Fields had not included a copy of the affidavit of probable cause in the record. App. 11. Fields' counter-statement of material facts makes various factual allegations regarding the affidavit, but includes no citations to the record where the affidavit could be found. See id. 71–72, 74–75. Under Federal Rules of Civil Procedure 56(c) and (e), such unsupported statements of fact need not be considered. The District Court properly declined to accept as true Fields' unsupported assertions regarding the affidavit.

Moreover, even if Fields had included the affidavit, a § 1983 claim is an improper vehicle for challenging the validity of his guilty plea. Fields is limited to filing a direct appeal, a petition for a writ of habeas corpus (which we concede is unavailable to Fields because he is not in custody), or another appropriate petition for post-conviction relief to challenge a guilty plea.[3] Fields claims in this § 1983 suit that the officers improperly

---

[3] Fields relies upon Basile v. Twp. of Smith, 752 F. Supp. 2d 643 (W.D. Pa. 2010), for the proposition that where a plaintiff alleges that his guilty plea resulted from fraud, perjury, or other corrupt means, he may attack his plea in a § 1983 civil case (rather than on direct appeal or via a habeas petition), but this rule finds no support in this Court's jurisprudence. The "fraud, perjury or other corrupt means" language comes from the Restatement (Second) of Torts, which sets out the rule that a conviction, even if reversed, "conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means." Restatement (Second) of Torts § 667 (1977). There is no basis upon which to rely on this language to assert that a guilty plea that has not been reversed on appeal can be undermined in a collateral civil action by making such allegations. To support its reading, the District Court in Basile relied on Unger v. Cohen, 718 F. Supp. 185, 187–88 (S.D.N.Y. 1989), which based its decision on the fact that the plaintiff there was not "in custody" and so could not seek habeas review. This Court, however, has held that Heck applies even in such circumstances. See Williams v. Consovoy, 453 F.3d 173, 178 (3d Cir. 2006).

arrested him and then manufactured the probable cause affidavit to cover it up, leading Fields to plead guilty to a lesser crime simply to avoid the risk of a (fraudulent) higher sentence. This allegation, if proven, would imply the invalidity of Fields' conviction, and so would run afoul of Heck. Finally, that Fields chose to plead guilty because he was offered "a substantially reduced set of charges" is of no moment: "[A] plea of guilty is not invalid merely because entered to avoid the possibility of a" higher sentence. Brady v. United States, 397 U.S. 742, 755 (1970).

B.

Officers who have probable cause to arrest a defendant may use force to effectuate the arrest, but they cannot use "excessive force." Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003). The elements of "a claim for excessive force as an unreasonable seizure under the Fourth Amendment" are: (1) "that a 'seizure' occurred," and (2) that the seizure "was unreasonable." Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999). Where a plaintiff alleges multiple instances of police misconduct, a reviewing court may not consider the entire course of conduct at once, but rather "the objective reasonableness analysis must be conducted separately for each . . . seizure that is alleged to be unconstitutional." County of Los Angeles v. Mendez, 137 S. Ct. 1539, 1547 (2017).

We agree with the District Court that, however objectionable, Labella's slap and grab did not amount to a seizure and so Fields' constitutional rights were not implicated

in the altercation.[4] After he was slapped and, by his own account, briefly grabbed, Fields freely moved away from Labella to complain to Reilly and thus plainly did not understand himself to have been seized by Labella. See Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 147 (3d Cir. 2005) ("A seizure occurs for Fourth Amendment purposes when 'a reasonable person would have believed that he was not free to leave.'" (quoting Michigan v. Chesternut, 486 U.S. 567, 573 (1988))).

Because Fields' guilty plea establishes that the officers had probable cause to arrest him, the only remaining question is whether their use of a Taser to subdue him was objectively reasonable. We agree with the District Court that it was. Factors to be considered when assessing the reasonableness of an officer's use of force include the severity of the crime, whether the suspect posed an immediate threat to public safety, and whether the suspect was actively resisting or evading arrest. See Graham v. Connor, 490 U.S. 386, 396 (1989). Here, incident to a valid arrest supported by probable cause, the officers faced an individual who had just made gestures at the officers that could reasonably be viewed as threatening and who had resisted the officers' attempt to peaceably place him under arrest. Under the circumstances, the Tasing was reasonable because it was proportional to the need for force, especially in light of Fields' active resistance of arrest.

[4] Nothing in our disposition of this case should be understood to imply that we take lightly Fields' allegations. Those allegations about Officer Labella's behavior are serious, and certainly deserving of investigation.

Fields does not address the reasonableness of the officers' conduct at the time of the Tasing (after Fields made moves towards Labella and resisted arrest), but instead principally argues that the District Court erred by separately considering the slap and the Tasing, because Fields' conduct at the end of the encounter can only be understood in light of Labella's provocation at the start of the encounter. Citing Billington v. Smith, 292 F.3d 1177 (9th Cir. 2002), Fields asserts that Labella's provocation "in committing a battery upon the person of Mr. Fields, created an atmosphere that was so toxic that the violence that occurred later was an inevitable consequence." Fields Br. 26. Thus, for instance, Fields' analysis of the Graham factors relies upon the circumstances as they existed at start of the encounter, when Fields had yet to commit a crime, had not resisted arrest, and posed no threat to the officers. See id. at 27. Unsurprisingly, this analysis yields the conclusion that the officers acted unreasonably in Tasing a non-resisting individual whom they had no probable cause to arrest in the first place.

Although the Court has little doubt that Fields' understandable anger lingered throughout the encounter and played a role in his response to his arrest, the inquiry is not whether Fields' actions were reasonable, but rather whether the officers' responses were reasonable under the circumstances, considering the situation they were facing. Cf. Johnson v. City of Philadelphia, 837 F.3d 343, 353 (3d Cir. 2016) (holding that the Fourth Amendment "does not oblige an officer to passively endure a life-threatening physical assault, regardless of the assailant's mental state"). On that score, the Supreme Court has expressly rejected the "provocation" rule established in Billington, and has reiterated that "[a]n excessive force claim is a claim that a law enforcement officer

carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances. It is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation . . . ." Mendez, 137 S. Ct. at 1547. Here, where Labella's provocation was not even an independent Fourth Amendment violation, it cannot be used to render improper a later-in-time and otherwise valid use of force.

The Supreme Court in Mendez left open the possibility that, under the Graham test, a court should consider "unreasonable police conduct prior to the use of force that foreseeably created the need to use it." Id. at 1547 n.*; see also Johnson, 837 F.3d at 351 (declining to decide whether Graham's "totality of the circumstances" test "should account for whether the officer's own reckless or deliberate conduct unreasonably created the need to use deadly force"). Fields, however, does not actually contend that a foreseeable consequence of Labella's slap was that the officers would at some later point need to Tase Fields to effectuate his lawful arrest and, in any event, his threatening behavior towards them — which provided the officers probable cause to arrest — was a superseding cause that broke the chain of proximate causation between the slap and the Tasing. See Johnson, 837 F.3d at 353–54 (holding that even if officer's conduct was unreasonable, given the time that elapsed between the conduct and the decedent's response, "no reasonable juror could conclude that [decedent's response] was an involuntary or foreseeable defensive response to the" officer's conduct); id. at 351–52 ("Whether or not [an officer] acted unreasonably at the outset . . . Plaintiff must still prove that [the officer's] allegedly unconstitutional actions proximately caused [the

injury]. Under ordinary tort principles, a superseding cause breaks the chain of proximate causation."). Fields has not established that his constitutional rights were violated,[5] so his § 1983 claim fails and we need not consider the issue of qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (2001).[6]

III.

We review the District Court's refusal to exercise supplemental jurisdiction for abuse of discretion. See Elkadrawy v. Vanguard Grp., 584 F.3d 169, 172 (3d Cir. 2009). After dismissing the federal claims before it, the District Court acted within its discretion in declining to assert supplemental jurisdiction over Fields' state law claims. Id. at 174.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

[5] Because the District Court properly granted summary judgment in favor of the defendants on Fields' false arrest and excessive force claims, it likewise properly dismissed the conspiracy claim for which those claims served as predicates. See In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999).

[6] Like the District Court, we express no views on the viability of Fields' state law claims, but hold only that the conduct at issue did not violate Field's federal constitutional rights.