## HARING, LIEUTENANT, ARLINGTON COUNTY POLICE DEPARTMENT, ET AL. v. PROSISE

No. 81–2169.   Argued April 20, 1983—Decided June 13, 1983

MARSHALL, J., delivered the opinion for a unanimous Court.

*David R. Lasso* argued the cause for petitioners. With him on the briefs was *Charles G. Flinn.*

*Norman A. Townsend* argued the cause for respondent. With him on the brief were *Sebastian K. D. Graber* and *Bradley S. Stetler.**

---

*\*Fred E. Inbau, Wayne W. Schmidt, James P. Manak, Evelle J. Younger, Daniel B. Hales,* and *David Crump* filed a brief for Ameri-

JUSTICE MARSHALL delivered the opinion of the Court.

The trial court accepted respondent John Franklin Prosise's plea of guilty to one count of manufacturing a controlled substance—phencyclidine. At the hearing at which respondent pleaded guilty, a police officer gave a brief account of the search of respondent's apartment that led to the discovery of material typically used in manufacturing this substance. Thereafter, Prosise brought a damages action under 42 U. S. C. § 1983 in Federal District Court against petitioner Gilbert A. Haring and the other officers who participated in the search of his apartment. The question presented by this case is whether respondent's § 1983 claim is barred by his prior guilty plea.

I

On April 27, 1978, pursuant to a plea agreement, Prosise pleaded guilty in the Circuit Court for Arlington County, Va., to one count of manufacturing phencyclidine. The Commonwealth then called one witness, Detective Henry Allen of the Arlington County Police Department. Allen testified that on September 7, 1977, he responded to a radio call directing him to an Arlington apartment which turned out to be leased to Prosise. By the time he arrived, two uniformed officers had placed Prosise under arrest for the possession of a controlled substance. After entering the apartment, Allen noticed various chemicals in the apartment as well as a quantity of what he believed to be phencyclidine. A warrant was later obtained for a search of the apartment. Allen and Detective Petti then conducted a search which led to the seizure of devices and chemicals used to manufacture phencyclidine,

cans for Effective Law Enforcement, Inc., et al. as amici curiae urging reversal.

Briefs of amici curiae urging affirmance were filed by Charles S. Sims and Burt Neuborne for the American Civil Liberties Union; and by Stephen A. Saltzburg for the University of Virginia School of Law Post-Conviction Assistance Project.

receipts for such chemicals, a paper containing a formula for making phencyclidine, and two buckets containing traces of the substance.

At the conclusion of Allen's testimony, the judge accepted Prosise's guilty plea, finding that it had been entered voluntarily and intelligently and that it had a sufficient basis in fact. On June 23, 1978, the court denied Prosise's motion to withdraw his plea and sentenced him to 25 years' imprisonment.[1]

On January 23, 1979, while under confinement in the Arlington Detention Center, Prosise filed a *pro se* action under 42 U. S. C. § 1983 against Lt. Gilbert A. Haring and various other members of the Arlington County Police Department who had participated in the search of his apartment. His complaint alleged that the officers had unlawfully searched his apartment prior to obtaining a search warrant, and that after obtaining the warrant the officers conducted a search that exceeded the scope of the warrant.

The District Court granted summary judgment for defendants on the ground that Prosise's guilty plea to the charge of manufacturing phencyclidine barred his § 1983 claim. The court reasoned that Prosise's failure to assert his Fourth Amendment claim in state court constituted a waiver of that right, precluding its assertion in any subsequent proceeding. It relied primarily on this Court's decision in *Tollett* v. *Henderson*, 411 U. S. 258 (1973), which held that when a state criminal defendant has pleaded guilty to the offense for which he was indicted by the grand jury, he cannot in a later federal habeas corpus proceeding raise a claim of discrimination in the selection of the grand jury. The District Court stated that, under the reasoning in *Tollett*, a guilty plea would similarly foreclose federal habeas inquiry into the constitutional-

---

[1] On July 17, 1979, the Supreme Court of Virginia denied respondent's petition for a writ of error to review the trial court's decision that his plea was voluntary and its refusal to permit the withdrawal of the plea.

ity of a search that turned up evidence of the crime charged. The court concluded:

> "If a defendant who pleads guilty is foreclosed from obtaining his freedom because of an illegal search and seizure, he should not be allowed to secure damages in a § 1983 suit and thereby litigate the antecedent constitutional question relating to the search that could not otherwise be heard because of *Tollett.*"

The District Court also appears to have held that Prosise's plea of guilty constituted an implied admission that the search of his apartment was legal. The court stated that even though the constitutionality of the police conduct was not litigated in the state criminal proceedings, Prosise's "plea of guilty estops him from asserting a fourth amendment claim in a § 1983 suit [because his] plea of guilty necessarily implied that the search giving rise to the incriminating evidence was lawful."

The Court of Appeals reversed in pertinent part and remanded for further proceedings. 667 F. 2d 1133 (CA4 1981). It held that the principles governing guilty pleas announced in *Tollett* are applicable only to subsequent habeas corpus proceedings and that the preclusive effect, if any, of a guilty plea upon subsequent proceedings under § 1983 "is to be determined on the basis of other principles, specifically, of collateral estoppel and the full faith and credit statute, 28 U. S. C. § 1738." *Id.*, at 1136–1137. The Court of Appeals proceeded to examine the law of Virginia "to determine whether, and to what extent, that state would give preclusive effect to the criminal judgment here in issue." *Id.*, at 1138. The court found that under Virginia law "criminal judgments, whether by guilty plea or adjudicated guilt, have no preclusive effect in subsequent civil litigation." *Id.*, at 1139. Because the courts of Virginia would not give preclusive effect to the criminal judgment, it was not entitled to any greater effect under § 1738.

The Court of Appeals concluded that in any event a guilty plea should not "have preclusive effect as to potential but not actually litigated issues respecting the exclusion of evidence on fourth amendment grounds." *Id.*, at 1140–1141. The court cited the general view of courts and commentators that "among the most critical guarantees of fairness in applying collateral estoppel is the guarantee that the party sought to be estopped had not only a full and fair opportunity but an adequate incentive to litigate 'to the hilt' the issues in question." *Id.*, at 1141. Unlike a criminal defendant who has been convicted after a full trial on the criminal charges, a defendant who pleads guilty has not necessarily had an adequate incentive to litigate "with respect to potential but unlitigated issues related to the exclusion of evidence on fourth amendment grounds." *Ibid.*

After the Court of Appeals denied rehearing, *id.*, at 1143, petitioners' suggestion for rehearing en banc was denied by an equally divided court. *Ibid.* We granted certiorari, 459 U. S. 904 (1982), to resolve the uncertainty concerning the impact of a guilty plea upon a later suit under § 1983.[2] We now affirm.

---

[2] In *Metros* v. *United States District Court for the District of Colorado*, 441 F. 2d 313 (1970), the Court of Appeals for the Tenth Circuit held that a guilty plea to one count of possession of heroin must be given preclusive effect in a subsequent civil rights action against police officers who had searched the premises in which the narcotics were found. Other federal courts have concluded, however, that civil rights plaintiffs are not barred from litigating issues that could have been raised in prior proceedings in state court on a different cause of action. See, *e. g.*, *New Jersey Ed. Assn.* v. *Burke*, 579 F. 2d 764, 772–774 (CA3 1978); *Lombard* v. *Board of Ed. of City of New York*, 502 F. 2d 631, 635–637 (CA2 1974). Since no motion to suppress evidence on Fourth Amendment grounds was ever raised at the state-court proceedings, this case does not present questions as to the scope of collateral estoppel with respect to particular issues that were litigated and decided at a criminal trial in state court. As we did in *Allen* v. *McCurry*, 449 U. S. 90, 93, n. 2 (1980), we now leave those questions to another day.

312

II

We must decide whether Prosise's § 1983 action[3] to redress an alleged Fourth Amendment violation[4] is barred by the judgment of conviction entered in state court following his guilty plea. Petitioners' initial argument is that under principles of collateral estoppel generally applied by the Virginia courts, Prosise's conviction would bar his subsequent civil challenge to police conduct, and that a federal court must therefore give the state judgment the same effect under 28 U. S. C. § 1738.[5]

In *Allen* v. *McCurry*, 449 U. S. 90 (1980), the Court considered whether the doctrine of collateral estoppel can be invoked against a § 1983 claimant to bar relitigation of a Fourth Amendment claim decided against him in a state criminal proceeding. The Court rejected the view that, because the § 1983 action provides the only route to federal district court for the plaintiff's constitutional claim, relitigation of the Fourth Amendment question in federal court must be permitted. No support was found in the Constitution or in § 1983

---

[3] Title 42 U. S. C. § 1983 at the time in question provided:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[4] The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[5] Title 28 U. S. C. § 1738 provides, in relevant part, that the "Acts, records and judicial proceedings" of any State, Territory, or Possession "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

for the "principle that every person asserting a federal right is entitled to one unencumbered opportunity to litigate that right in a federal district court, regardless of" whether that claim has already been decided against him after a full and fair proceeding in state court. *Id.*, at 103. The Court concluded that the doctrine of collateral estoppel therefore applies to § 1983 suits against police officers to recover for Fourth Amendment violations. The Court in *Allen* v. *McCurry* did not consider precisely how the doctrine of collateral estoppel should be applied to a Fourth Amendment question that was litigated and decided during the course of a state criminal trial. *Id.*, at 105, n. 25.

We begin by reviewing the principles governing our determination whether a § 1983 claimant will be collaterally estopped from litigating an issue on the basis of a prior state-court judgment. Title 28 U. S. C. § 1738 generally requires "federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen* v. *McCurry*, 449 U. S., at 96.[6] In federal actions, including § 1983 actions, a state-court judgment will not be given collateral-estoppel effect, however, where "the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Id.*, at 101.[7] Moreover, additional exceptions to collateral estoppel

---

[6] If the state courts would not give preclusive effect to the prior judgment, "the courts of the United States can accord it no greater efficacy" under § 1738. *Union & Planters' Bank* v. *Memphis*, 189 U. S. 71, 75 (1903).

[7] We have recognized various other conditions that must also be satisfied before giving preclusive effect to a state-court judgment. See generally *Montana* v. *United States*, 440 U. S. 147 (1979). For example, collateral-estoppel effect is not appropriate when "controlling facts or legal principles have changed significantly since the state-court judgment," *id.*, at 155, or when "special circumstances warrant an exception to the normal rules of preclusion," *ibid.*; see, *e. g.*, *Porter & Dietsche, Inc.* v. *FTC*, 605 F. 2d 294, 300 (CA7 1979); cf. *Montana* v. *United States*, *supra*, at 163

may be warranted in § 1983 actions in light of the "understanding of § 1983" that "the federal courts could step in where the state courts were unable or unwilling to protect federal rights." *Ibid.* Cf. *id.*, at 95, n. 7; *Board of Regents* v. *Tomanio*, 446 U. S. 478, 485–486 (1980) (42 U. S. C. § 1988 authorizes federal courts, in an action under § 1983, to disregard an otherwise applicable state rule of law if the state law is inconsistent with the federal policy underlying § 1983).

The threshold question is whether, under the rules of collateral estoppel applied by the Virginia courts, the judgment of conviction based upon Prosise's guilty plea would foreclose him in a later civil action from challenging the legality of a search which had produced inculpatory evidence.[8] Because there is no Virginia decision precisely on point, we must look for guidance to Virginia decisions concerning collateral estoppel generally. While it is often appropriate to look to the law as it is generally applied in other jurisdictions for additional guidance, we need not do so in this case because the state-law question is not a particularly difficult one.

The courts of Virginia have long recognized that a valid final " 'judgment rendered upon one cause of action' " may bar a party to that action from later litigating " 'matters arising in a

---

(preclusive effect to a state-court judgment may be inappropriate when the § 1983 claimant has not " 'freely and without reservation submit[ted] his federal claims for decision by the state courts . . . and ha[d] them decided there . . . .' ") (quoting *England* v. *Medical Examiners*, 375 U. S. 411, 419 (1964)).

[8] It is our practice to accept a reasonable construction of state law by the court of appeals "even if an examination of the state-law issue without such guidance might have justified a different conclusion." *Bishop* v. *Wood*, 426 U. S. 341, 346 (1976). See *id.*, at 346, n. 10. Because we would be particularly hesitant to consider creating a new federal rule of preclusion, however, where a state rule of preclusion may itself be given effect under 28 U. S. C. § 1738, we consider petitioners' assertion that the Virginia courts would give collateral-estoppel effect to Prosise's conviction. We emphasize, however, that, standing alone, a challenge to state-law determinations by the court of appeals will rarely constitute an appropriate subject of this Court's review. See this Court's Rule 17.

suit upon a different cause of action.'" *Eason* v. *Eason*, 204 Va. 347, 350, 131 S. E. 2d 280, 282 (1963), quoting *Kemp* v. *Miller*, 166 Va. 661, 674–675, 186 S. E. 99, 104 (1936).[9] However, "the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Ibid.* Unless an issue was actually litigated and determined in the former judicial proceeding, Virginia law will not treat it as final. See, *e. g., Luke Construction Co.* v. *Simpkins*, 223 Va. 387, 291 S. E. 2d 204 (1982); *Eason* v. *Eason, supra.* Compare *Brown* v. *Felsen*, 442 U. S. 127, 139, n. 10 (1979). Furthermore, collateral estoppel precludes the litigation of only those issues necessary to support the judgment entered in the first action. As the Virginia Supreme Court stated in *Petrus* v. *Robbins*, 196 Va. 322, 330, 83 S. E. 2d 408, 412 (1954), "[t]o render the judgment conclusive, it must appear by the record of the prior suit that the particular matter sought to be concluded was necessarily tried or determined,—that is, that the verdict could not have been rendered without deciding that matter." Cf. *Block* v. *Commissioners*, 99 U. S. 686, 693 (1879); *Segal* v. *American Tel. & Tel. Co.*, 606 F. 2d 842, 845, n. 2 (CA9 1979).

---

[9] Like the federal courts, the courts of Virginia apply different rules of preclusion to matters arising in a suit between the same parties and based upon the same causes of action as those involved in the previous proceeding. Under the doctrine of res judicata, "'the judgment in the former [action] is conclusive of the latter, not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings, or as incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered.'" *Eason* v. *Eason*, 204 Va., at 350, 131 S. E. 2d, at 282, quoting *Kemp* v. *Miller*, 166 Va., at 674, 186 S. E., at 103–104. This doctrine does not apply, however, to a later action between different parties or to a later action between the same parties on a different claim or demand. *Ibid.*

It is clear from the foregoing that the doctrine of collateral estoppel would not be invoked in this case by the Virginia courts for at least three reasons. First, the legality of the search of Prosise's apartment was not actually litigated in the criminal proceedings. Indeed, no issue was "actually litigated" in the state proceeding since Prosise declined to contest his guilt in any way. Second, the criminal proceedings did not actually decide against Prosise any issue on which he must prevail in order to establish his § 1983 claim. The only question raised by the criminal indictment and determined by Prosise's guilty plea in Arlington Circuit Court was whether Prosise unlawfully engaged in the manufacture of a controlled substance. This question is simply irrelevant to the legality of the search under the Fourth Amendment or to Prosise's right to compensation from state officials under § 1983.

Finally, none of the issues in the § 1983 action could have been "necessarily" determined in the criminal proceeding. Specifically, a determination that the county police officers engaged in no illegal police conduct would not have been essential to the trial court's acceptance of Prosise's guilty plea. Indeed, a determination that the search of Prosise's apartment was illegal would have been entirely irrelevant in the context of the guilty plea proceeding. Neither state nor federal law requires that a guilty plea in state court be supported by legally admissible evidence where the accused's valid waiver of his right to stand trial is accompanied by a confession of guilt. See *Kibert* v. *Commonwealth*, 216 Va. 660, 222 S. E. 2d 790 (1976); cf. *North Carolina* v. *Alford*, 400 U. S. 25, 37–38, and n. 10 (1970); *Willett* v. *Georgia*, 608 F. 2d 538, 540 (CA5 1979).[10]

---

[10] The court below found that, even if the Fourth Amendment issue had been litigated and necessarily determined by the state court, that determination would not be given preclusive effect for an additional reason: under Virginia law, "'a judgment rendered in a criminal prosecution, whether of conviction or acquittal, does not establish in a subsequent civil action the truth of the facts on which it is rendered.'" 667 F. 2d 1133,

We therefore conclude that Virginia law would not bar Prosise from litigating the validity of the search conducted by petitioners. Accordingly, the issue is not foreclosed under 28 U. S. C. § 1738.

## III

We turn next to petitioners' contention that even if Prosise's claim is not precluded under § 1738, this Court should create a special rule of preclusion which nevertheless would bar litigation of his § 1983 claim. As a general matter, even when issues have been raised, argued, and decided in a prior proceeding, and are therefore preclusive under state

1139 (CA4 1981), quoting *Aetna Casualty & Surety Co.* v. *Anderson,* 200 Va. 385, 388, 105 S. E. 2d 869, 872 (1958). This general rule is based largely on the traditional principle that collateral estoppel may only be asserted by persons who were either a party or privy to the prior action. *Aetna Casualty & Surety Co.* v. *Anderson, supra,* at 389, 105 S. E. 2d, at 872. Although the doctrine of mutuality of parties has been abandoned in recent years by the courts of many jurisdictions, see, *e. g., Parklane Hosiery Co.* v. *Shore,* 439 U. S. 322, 326–333 (1979); *Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation,* 402 U. S. 313 (1971), it has not been rejected by the courts of Virginia. *Norfolk & Western R. Co.* v. *Bailey Lumber Co.,* 221 Va. 638, 272 S. E. 2d 217 (1980).

In one reported case, however, the highest court of the State has allowed a stranger to a criminal conviction to invoke the doctrine of collateral estoppel in an action brought against him by the convicted person. *Eagle, Star & British Dominions Ins. Co.* v. *Heller,* 149 Va. 82, 140 S. E. 314 (1927). In *Eagle, Star* the court held that a convicted arsonist was foreclosed from seeking to recover the proceeds of a fire insurance policy. This exception to the mutuality doctrine was expressly limited to cases in which "the plaintiff who brings [the] action has committed the felony, and seeks to recover the fruit of his own crime." *Id.,* at 105, 140 S. E., at 321. That *Eagle, Star* announced only a narrow exception to the rule that a criminal conviction may not be given preclusive effect in a later action was confirmed by the court in *Aetna Casualty & Surety Co.* v. *Anderson, supra,* at 389, 105 S. E. 2d, at 872. See also *Smith* v. *New Dixie Lines, Inc.,* 201 Va. 466, 472–473, 111 S. E. 2d 434, 438–439 (1959). Since a § 1983 action is not a suit to "recover the fruit" of the plaintiff's crime, the court below reasonably concluded that, under Virginia law, a criminal conviction would not be given preclusive effect in a § 1983 action with respect to any issues, including issues that were actually and necessarily decided.

law, "[r]edetermination of [the] issues [may nevertheless be] warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana* v. *United States*, 440 U. S. 147, 164, n. 11 (1979). Yet petitioners maintain that Prosise should be barred from litigating an issue that was never raised, argued, or decided, simply because he had an opportunity to raise the issue in a previous proceeding. Petitioners reason that by pleading guilty Prosise should be deemed to have either admitted the legality of the search or waived any Fourth Amendment claim, thereby precluding him from asserting that claim in any subsequent suit. According to petitioners, such a federal rule of preclusion imposed in addition to the requirements of § 1738 is necessary to further important interests in judicial administration.

There is no justification for creating such an anomalous rule. To begin with, Prosise's guilty plea in no way constituted an admission that the search of his apartment was proper under the Fourth Amendment. During the course of proceedings in Arlington County Circuit Court, Prosise made no concession with respect to the Fourth Amendment claim.

Petitioners contend that we should infer such an admission because Prosise had a substantial incentive to elect to go to trial if he considered his Fourth Amendment claim meritorious since the State would most likely have been unable to obtain a conviction in the absence of the evidence seized from Prosise's apartment. In our view, however, it is impermissible for a court to assume that a plea of guilty is based on a defendant's determination that he would be unable to prevail on a motion to suppress evidence. As we recognized in *Brady* v. *United States*, 397 U. S. 742, 750 (1970), and reaffirmed in *Tollett* v. *Henderson*, 411 U. S., at 263, a defendant's decision to plead guilty may have any number of other motivations:

> "For some people, their breach of a State's law is alone sufficient reason for surrendering themselves and ac-

cepting punishment. For others, apprehension and charge, both threatening acts by the Government, jar them into admitting their guilt. In still other cases, the post-indictment accumulation of evidence may convince the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family."

Similarly, a prospect of a favorable plea agreement or "the expectation or hope of a lesser sentence . . . are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether [a Fourth Amendment challenge to the introduction of inculpatory evidence] might be factually supported." *Tollett* v. *Henderson, supra,* at 268. Therefore, Prosise's decision not to exercise his right to stand trial cannot be regarded as a concession of any kind that a Fourth Amendment evidentiary challenge would fail. Cf. *Brown* v. *Felsen,* 442 U. S., at 137.

We similarly reject the view, argued by petitioners and accepted by the District Court, that by pleading guilty Prosise "waived" any claim involving an antecedent Fourth Amendment violation. Petitioners rely on our prior decisions concerning the scope of federal habeas review of a criminal conviction based upon a guilty plea. See, *e. g., Brady* v. *United States, supra; Tollett* v. *Henderson, supra; Blackledge* v. *Perry,* 417 U. S. 21 (1974); *Lefkowitz* v. *Newsome,* 420 U. S. 283 (1975); *Menna* v. *New York,* 423 U. S. 61 (1975) *(per curiam).* In *Brady,* we reaffirmed that a guilty plea is not simply "an admission of past conduct," but a waiver of constitutional trial rights such as the right to call witnesses, to confront and cross-examine one's accusers, and to trial by jury. *Brady, supra,* at 747–748, citing *Boykin* v. *Alabama,* 395 U. S. 238, 242 (1969). For this reason, a guilty plea "not only must be voluntary but must be [a] knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances and likely consequences." *Brady, supra,* at 748. In *Tollett* v. *Henderson,* we concluded that an intelligent and voluntary plea of guilty generally bars habeas review of

claims relating to the deprivation of constitutional rights that occurred before the defendant pleaded guilty. We held that, because "[t]he focus of federal habeas inquiry is the nature of [defense counsel's] advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity," 411 U. S., at 266, Henderson was not entitled to a writ of habeas corpus on the basis of infirmities in the selection of the grand jury.

Our decisions subsequent to *Tollett* make clear that a plea of guilty does not bar the review in habeas corpus proceedings of all claims involving constitutional violations antecedent to a plea of guilty. A defendant who pleads guilty may seek to set aside a conviction based on prior constitutional claims which challenge "the very power of the State to bring the defendant into court to answer the charge brought against him." *Blackledge* v. *Perry*, 417 U. S., at 30. Because a challenge to an indictment on grounds of prosecutorial vindictiveness was such a claim, we concluded that a federal court may grant the writ of habeas corpus if it found merit in that constitutional challenge. *Id.*, at 30–31. We also applied this principle in *Menna* v. *New York, supra,* in holding that a double jeopardy claim may be raised in federal habeas proceedings following a state-court conviction based on a plea of guilty. In *Lefkowitz* v. *Newsome, supra,* we held that *Tollett* does not apply to preclude litigation of a Fourth Amendment claim subsequent to a guilty plea when the State itself permits the claim to be raised on appeal.

Under our past decisions, as the District Court correctly recognized, a guilty plea results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence obtained in violation of the Fourth Amendment. It does not follow, however, that a guilty plea is a "waiver" of antecedent Fourth Amendment claims that may be given effect outside the confines of the criminal proceeding. The defendant's rights under the Fourth Amendment are not among the trial rights that he

necessarily waives when he knowingly and voluntarily pleads guilty. Moreover, our decisions provide no support for petitioners' waiver theory for the simple reason that these decisions did not rest on any principle of waiver. The cases relied on by petitioners all involved challenges to the validity of a state criminal conviction. Our decisions in *Tollett* and the cases that followed simply recognized that when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have been improperly seized. State law treats a guilty plea as "a break in the chain of events [that] preceded it in the criminal process," *Tollett* v. *Henderson, supra*, at 267. Therefore, the conclusion that a Fourth Amendment claim ordinarily may not be raised in a habeas proceeding following a plea of guilty does not rest on any notion of waiver, but rests on the simple fact that the claim is irrelevant to the constitutional validity of the conviction. As we explained in *Menna* v. *New York, supra*, at 62–63, n. 2:

"[W]aiver was not the basic ingredient of this line of cases. The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." (Emphasis in original; citation omitted.)

It is therefore clear that Prosise did not waive his Fourth Amendment claims by pleading guilty in state court. The cases relied on by petitioners do not establish that a guilty plea is a waiver of Fourth Amendment claims. Moreover, the

justifications for denying habeas review of Fourth Amendment claims following a guilty plea are inapplicable to an action under § 1983. While Prosise's Fourth Amendment claim is irrelevant to the constitutionality of his criminal conviction, and for that reason may not be the basis of a writ of habeas corpus, that claim is the crux of his § 1983 action which directly challenges the legality of police conduct.[11]

Adoption of petitioners' rule of preclusion would threaten important interests in preserving federal courts as an available forum for the vindication of constitutional rights. See *England* v. *Medical Examiners*, 375 U. S. 411, 416–417 (1964); *McClellan* v. *Carland*, 217 U. S. 268, 281 (1910); *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 40 (1909); *Cohens* v. *Virginia*, 6 Wheat. 264, 404 (1821). Under petitioners' rule, whether or not a state judgment would be accorded preclusive effect by state courts, a federal court would be barred from entertaining a § 1983 claim. The rule would require "an otherwise unwilling party to try [Fourth Amendment] questions to the hilt" and prevail in state court "in order to [preserve] the mere possibility" of later bringing a § 1983 claim in federal court. *Brown* v. *Felsen*, 442 U. S.,

---

[11] Although petitioners also contend that a special federal rule of preclusion is necessary to preserve important federal interests in judicial administration, we fail to understand how any such interests justify the adoption of a rule that would bar the assertion of constitutional claims which have never been litigated. See *Allen* v. *McCurry*, 449 U. S., at 95, n. 7; cf. *Patsy* v. *Florida Board of Regents*, 457 U. S. 496, 501–502, 512–513, and n. 13 (1982); *Kremer* v. *Chemical Construction Corp.*, 456 U. S. 461, 476 (1982). Petitioners allude generally to the interests that underlie the principles of collateral estoppel, such as the elimination of "the expense, vexation, waste, and possible inconsistent results of duplicatory litigation." *Hoag* v. *New Jersey*, 356 U. S. 464, 470 (1958). Yet these interests are quite simply inapplicable to this case. When a court accepts a defendant's guilty plea, there is no adjudication whatsoever of any issues that may subsequently be the basis of a § 1983 claim. There is thus no repetitive use of judicial resources and no possibility of inconsistent decisions that could justify precluding the bringing of such claims. Cf. *England* v. *Medical Examiners*, 375 U. S., at 419.

at 135. Defendants who have pleaded guilty and who wish to bring a § 1983 claim would be forced to bring that claim in state court, if at all. Not only have petitioners failed to advance any compelling justification for a rule confining the litigation of constitutional claims to a state forum, but such a rule would be wholly contrary to one of the central concerns which motivated the enactment of § 1983, namely, the "grave congressional concern that the state courts had been deficient in protecting federal rights." *Allen* v. *McCurry*, 449 U. S., at 98–99, citing *Mitchum* v. *Foster*, 407 U. S. 225, 241–242 (1972), and *Monroe* v. *Pape*, 365 U. S. 167, 180 (1961). See *Patsy* v. *Florida Board of Regents*, 457 U. S. 496 (1982).

## IV

We conclude that respondent's conviction in state court does not preclude him from now seeking to recover damages under 42 U. S. C. § 1983 for an alleged Fourth Amendment violation that was never considered in the state proceedings. Accordingly, the judgment of the Court of Appeals is

*Affirmed.*