986 F.2d 1421
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward N. CARLTON, Plaintiff-Appellant,
v.
John PYTELL; Jerry Reynard; Robert J. Winter; City of Ann
Arbor; Ann Arbor Police Department, Defendants-Appellees.
 No. 92-1050.
 United States Court of Appeals, Sixth Circuit.
 Feb. 22, 1993.
 
 Before BATCHELDER and KENNEDY, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Edward N. Carlton appeals the district court's granting of summary judgment in this suit under 42 U.S.C. § 1983. The suit arises out of defendants-appellees police officers' obtaining a search warrant to remove a bullet from Carlton's body for use as evidence against him. We affirm the district court's granting of summary judgment because Carlton is collaterally estopped from challenging the constitutionality of the bullet removal through a section 1983 action when a state appeals court has upheld the constitutionality of the search.
 
 I.
 
 2
 At 8:10 p.m. on November 1, 1985, the Ann Arbor, Michigan, Police Department received a report of gun shots being fired in the area of the Arrowwood Housing Project in the City of Ann Arbor. Police responded to the scene, but were unable to locate any witnesses, victims or other indications of problems.
 
 
 3
 At 9:50 p.m. that evening, a man who had been shot walked into a Speedway Gas Station in Canton Township and said, "Call me some help. I'm shot." Canton Township police responded to the request for assistance. When they arrived, they located a shooting victim, who identified himself as Thomas Edward Seth. It was later determined that this was plaintiff-appellant Carlton. He was bleeding heavily from a gunshot wound in the upper left chest. While searching the area around the gas station, police officers located several drops of fresh blood and a homemade blue vinyl holster with fresh blood on it.
 
 
 4
 Carlton told police that he had ridden from Detroit to Ann Arbor with a friend, whose home address was unknown, and while in Ann Arbor, he gone to a residence in a housing project. He reported that while walking up to the residence, he was approached by a person who came out of the bushes with a gun and robbed and shot him. Carlton claimed that after the shooting, his companion placed him in his car, drove him to Canton, and let him off at the gas station. The Canton Police relayed this information to the Ann Arbor Police Department.
 
 
 5
 Carlton was taken by ambulance to the Westland Medical Center. Dr. Ronald Hirschel, Carlton's treating physician at the hospital, stated that he told Carlton that he had a bullet lodged in a position that was "very superficial in his back," and that before he left the hospital "we could go ahead and remove it." Dr. Hirschel claims that Carlton stated that it would be a "good idea" to have the bullet removed.
 
 
 6
 At 1:00 p.m. on November 2, 1985, Detective Robert Winter of the Ann Arbor Police Department was called to the scene of a homicide in an apartment in the Arrowwood Housing Project in Ann Arbor. Winter observed two bullet holes in the front door of the apartment. Just inside the apartment door, Winter found the body of Ronald Robinson, who had been shot in the head. Underneath Robinson was a .38 caliber Colt pistol that had one expended shell casing, indicating that the gun had been fired once.
 
 
 7
 Shortly after that, Ann Arbor police officers, including Detective Reynard, arrived at the hospital to question Carlton. After being questioned, Carlton told his doctor that he did not want the bullet removed.
 
 
 8
 Detective Robert Winter prepared an affidavit for a warrant for the removal of the bullet. After determining that probable cause existed, the local magistrate issued the warrant. However, hospital attorneys questioned both the affidavit and warrant, and the thoroughness of the statements contained in them. Winter drew up a second affidavit, and this affidavit was presented to 18th District Court Judge Gail McKnight, who issued a search warrant for removal of the bullet, "located just under the skin on the left side of the back."[1] After hospital lawyers approved the search warrant, Dr. Hirschel proceeded to remove the bullet.
 
 
 9
 Before the bullet was removed, Carlton was given valium and a local anesthetic, lidocaine. The doctor's affidavit indicates that he "took a scalpel blade and made small incision, I guess about a centimeter in size, down to the level of the bullet, which was, as I mentioned before, fairly superficial, and in doing so we were simply able to express the bullet from that incision." The doctor reported that by pushing around the sides of the incision, he popped the bullet out. He noted that the procedure took a couple of minutes in actual operating time. About one hour after the operation, Carlton walked away from the hospital without being discharged.
 
 
 10
 Carlton was later apprehended and charged in state court with the murder of Ronald Robinson. Ballistic tests showed that the bullet removed from Carlton had been fired from the gun found under the body of Robinson. During the criminal proceedings, Carlton moved to suppress the bullet. The motion was denied in both the state district court and the state circuit court. Carlton was convicted of the murder and sentenced to life in prison. He appealed to the Michigan Court of Appeals on the grounds, inter alia, that removal of the bullet violated his constitutional rights. The Michigan Court of Appeals affirmed the conviction and the Michigan Supreme Court denied review.
 
 
 11
 While his state court appeal was pending, Plaintiff-appellant Carlton filed this pro se section 1983 action in district court against the City of Ann Arbor, the Ann Arbor Police Department, Officer Reynard, and Officer Winter, claiming that Ann Arbor police officers violated his constitutional rights in obtaining the bullet. Defendants filed a motion for summary judgment, which was initially denied without prejudice because defendants failed to provide properly certified attachments to their motion. Defendants again filed a motion for summary judgment, this time with the properly certified attachments. The district court stayed proceedings pending the resolution of Carlton's state court criminal appeal.
 
 
 12
 After the Michigan Court of Appeals affirmed the criminal conviction and the Michigan Supreme Court denied review, the district court again considered the motion for summary judgment and granted the motion. Carlton now appeals the granting of the motion.
 
 II.
 
 13
 In his pro se brief, plaintiff-appellant Carlton argues that summary judgment was inappropriate because the removal of the bullet violated his Fourth Amendment right to be free from unreasonable searches and seizures.[2] Defendants counter that summary judgment was appropriate because there was no constitutional violation and the defendant officers were entitled to qualified immunity.
 
 
 14
 We affirm the district court's granting of summary judgment for the defendants because Carlton is collaterally estopped from challenging the constitutionality of his state court conviction through a section 1983 action when the Michigan Court of Appeals already has upheld the conviction over the same Fourth Amendment challenge.
 
 
 15
 We note at the outset that the case before us is a civil suit for damages based on 42 U.S.C. § 1983 and the Fourth Amendment, not a Fourth Amendment challenge to Carlton's conviction for murder. In the state criminal proceeding, Carlton did make a Fourth Amendment challenge to his conviction based on the removal of the bullet. A criminal conviction does not, of itself, bar a subsequent section 1983 action contesting the legality of a search that produced evidence supporting the conviction. Haring v. Prosise, 462 U.S. 306, 313-14, 103 S.Ct. 2368, 2373 (1983); Dodrill v. Ludt, 764 F.2d 442, 443 (6th Cir.1985); Reneer v. Wall, 916 F.2d 713, at p. 6 n. 2 (6th Cir.1990) (unpublished per curiam) (available on Westlaw), cert. denied, 111 S.Ct. 998 (1991). However, a claim in a section 1983 suit may be subject to the preclusive effect of collateral estoppel when a motion to suppress the evidence based on a Fourth Amendment challenge was denied in the state criminal proceeding, as it was in this case.
 
 
 16
 Section 1738 of Title 28 provides, in relevant part, that the "Acts, records and judicial proceedings" of any State, Territory or Possession "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738. As restated by the Supreme Court in Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 415 (1980), this statute requires "federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Id. In that case, the plaintiff was convicted in state court after the court denied his motion to suppress the evidence under the Fourth Amendment. He then brought a federal section 1983 suit for damages against the police officers, the city and the police department for the Fourth Amendment violation. The Supreme Court concluded that the doctrine of collateral estoppel applies to section 1983 suits against police officers to recover for Fourth Amendment violations, and refused to permit the prisoner to relitigate the issue, despite the fact that the prisoner could not challenge the conviction under federal habeas corpus because he had not claimed that the issue was not fully and fairly litigated in the state court. Id. at 102-05, 101 S.Ct. at 419-20. Thus, the Court held that the issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal section 1983 suit as they enjoy in the courts of the State where the judgment was rendered.
 
 
 17
 In Migra v. Warren City School District Board of Education, 465 U.S. 75, 83-85, 104 S.Ct. 892, 897-98 (1984), the Supreme Court went a step farther by finding that a state court judgment has the same preclusive effect in federal court that the judgment would have in state court not only as to issues actually raised but also as to issues that were not raised but that could have been raised in the state court proceeding. Id.
 
 
 18
 Nonetheless, collateral estoppel does not bar the relitigation of constitutional claims in a section 1983 action if they in fact were not fully and fairly litigated in the prior state criminal proceeding. Allen, 449 U.S. at 101, 101 S.Ct. at 418. Also, additional exceptions to collateral estoppel may be warranted in section 1983 actions "in light of the 'understanding of § 1983' that 'the federal courts could step in where the state courts were unable or unwilling to protect federal rights.' " Haring v. Prosise, 462 U.S. at 313-14, 103 S.Ct. at 2373.
 
 
 19
 Here, since Carlton was convicted in Michigan state court, the threshold question is whether under the rules of collateral estoppel applied by the Michigan courts, the judgment of conviction would foreclose him in a later civil suit from challenging the legality of the search. Haring, 462 U.S. at 314, 103 S.Ct. 2373. Under Michigan law, Carlton would be collaterally estopped from raising this Fourth Amendment challenge in a subsequent civil suit. In Michigan, collateral estoppel "bars the relitigation of issues previously decided when such issues are raised in a subsequent suit by the same parties based upon a different cause of action." Knoblauch v. Kenyon, 163 Mich.App. 712, 415 N.W.2d 286, 287 (1987). For collateral estoppel to apply, the same ultimate issues underlying the first action must be involved in the second action. The parties must also have had a full opportunity to litigate the ultimate issues in the former action. Id. at 287. Contrary to the modern trend, Michigan law also requires mutuality of the parties, so that the litigants in the second suit must have been parties or privy to parties in the first suit. Alterman v. Provizer, Eisenberg, Lichtenstein & Pearlman, 195 Mich.App. 422, 491 N.W.2d 868, (Westlaw 183706) (1992). However, Michigan's courts have established several exceptions to the mutuality requirement. One exception to the mutuality rule apparently exists when the first suit is a criminal matter and the second suit is a civil matter. Knoblauch, 163 Mich.App. at 712, 415 N.W.2d at 289 (1987) ("[T]here is evidence that Michigan courts have similarly repudiated the mutuality requirement in the criminal to civil context."). See Imperial Kosher Catering, Inc. v. The Travelers Indem. Co., 73 Mich.App. 543, 252 N.W.2d 509 (1977) (arson judgment used in subsequent civil insurance coverage case); Lichon v. American Universal Ins. Co., 435 Mich. 408, 430, 459 N.W.2d 288, 299 (1990) (noting exception to mutuality may be appropriate for criminal conviction in civil case but taking no position on issue; criticizing Imperial Kosher Catering for inadequate reasoning). See also Restatement Judgments 2d, § 85, comment (e), pp. 298-99 ("well reasoned decisions had extended the rule of preclusion to operate in favor of third persons where the first action is criminal and the second is civil ...").
 
 
 20
 Here, plaintiff Carlton is attempting to relitigate in a federal civil suit the precise issue that was decided in the previous state court case. Carlton's murder conviction in state court was based in part on the evidence obtained from the bullet removed from him pursuant to the search warrant. The Michigan Court of Appeals upheld the constitutionality of the search under the Fourth Amendment, and the Michigan Supreme Court denied review. Carlton had a full and fair opportunity to litigate the constitutionality of the search at the state court level. Now, he seeks monetary damages under 42 U.S.C. § 1983 and the Fourth Amendment for the same actions that he claimed in state court violated his Fourth Amendment rights. Although the parties in this case are not the same parties or privy to the parties in the criminal matter, Michigan's exception to the mutuality requirement in the criminal to civil context applies here. Thus, Carlton's section 1983 action against the police officers to recover for Fourth Amendment violations is barred by the doctrine of collateral estoppel. Haring, 462 U.S. at 313, 103 S.Ct. at 2373 (discussing Allen v. McCurry ).
 
 III.
 
 21
 Plaintiff Carlton makes numerous other arguments in his pro se brief, including that Officer Pytell violated his rights by taking his belongings after he was arrested; that he was illegally "arrested" when police officers were stationed outside his hospital room; that his Fourth Amendment claim was not fairly reviewed in his state criminal proceeding because of constitutional violations in the proceedings; that the police illegally had blood withdrawn from him; that the district court improperly dismissed the Jane Doe and John Doe medical staff defendants; that the district court failed to disqualify the magistrate judge; and that the defendants delayed mailing him their brief on appeal. These claims are all either clearly without merit, collaterally estopped (see discussion above), or claims that must be addressed through a federal habeas corpus action under 28 U.S.C. § 2254.
 
 IV.
 
 22
 For the reasons set out above, we AFFIRM the district court's granting of summary judgment but for reasons other than those stated by the district court. Because this issue of the bullet removal appears to have been fully and fairly litigated in the state court proceeding and was affirmed by the Michigan Court of Appeals, plaintiff Carlton is collaterally estopped from raising this issue in this section 1983 suit. Therefore, the case is dismissed.
 
 
 
 [1]
 McKnight signed the warrant in several places, but failed to sign it on the signature line on the last page. According to the officers' affidavits, Winter and Reynard were unaware of the mistake
 
 
 [2]
 He also argues that the search warrant was never signed by Judge McKnight, and that after Judge McKnight reviewed the affidavit supporting the search warrant, the police altered it