45 F.3d 426
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Kenneth Ray MCGEE, Plaintiff-Appellant,
v.
A. L. COLEY, Defendant-Appellee,
and State of North Carolina, Defendant.
 No. 93-2441.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1994.
Decided Jan. 6, 1995.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, Senior District Judge. (CA-92-140-2)
 ARGUED: Susan Hayes, Pfaff, Elmore & Hayes, Greensboro, NC, for appellant.
 Joseph Patrick Dugdale, Asst. Atty. Gen., NC Dept. of Justice, Raleigh, NC, for appellee. ON BRIEF: Michael F. Easley, Atty. Gen., Isaac T. Avery, III, Sp. Deputy Atty. Gen., NC Dept. of Justice, Raleigh, NC, for appellee.
 M.D.N.C.
 REVERSED AND REMANDED.
 Before HALL and HAMILTON, Circuit Judges, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Kenneth Ray McGee appeals a judgment as a matter of law granted at the close of evidence in his excessive force action against North Carolina State Patrolman A. L. Coley. We hold that the evidence presented genuine issues of material fact that the jury should have been permitted to resolve, and we reverse and remand for a new trial.
 
 
 2
 * McGee filed this action under 42 U.S.C. Sec. 1983, claiming that his Fourth Amendment right to be free from unreasonable seizures was violated when trooper Coley hit him across the back of the head with a blackjack while he was handcuffed and compliant. Our review of a judgment as a matter of law under Fed.R.Civ.P. 50(a) is de novo, and we view the evidence in the light most favorable to the nonmovant, McGee. Goedel v. Norfolk & Western Ry. Co., 13 F.3d 807, 810 (4th Cir.1994). We will uphold the judgment only "if under the governing law there can be but one reasonable conclusion as to the verdict." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).
 
 
 3
 McGee, who worked for a trucking company, was driving a company truck early in the morning of July 2, 1990. He swerved to avoid a car and his truck turned over on the side of the highway. He was knocked unconscious. Trooper Coley arrived shortly afterward and was on the scene when McGee was put in an ambulance and transported to Randolph Hospital. While still at the accident scene, Coley received a call that McGee was creating a disturbance at the hospital.
 
 
 4
 When Coley arrived at the hospital, he told McGee that he was being charged with driving while intoxicated. He asked McGee to sit in the patrol car. Coley told McGee that he disbelieved McGee's story about the other car, and he asked McGee how fast he was going. McGee said he didn't know, but when Coley pressed him, McGee replied "45, 65--who knows?" Coley promptly wrote him a ticket for travelling 65 MPH in a 45 MPH zone and another ticket for driving left of center.
 
 
 5
 When asked why he was refusing treatment at Randolph Hospital, McGee replied that he wanted to go to another local hospital where he had been treated on another occasion. Coley told him that he was out of luck if he refused treatment at Randolph Hospital, and McGee responded that he was an American and could choose his doctor. Coley then exited the patrol car, opened McGee's door, and grabbed his shoulder. McGee protested and pulled away, but he finally got out slowly. Coley informed him that he was going to the police station for a breathalyzer test.[1]
 
 
 6
 At this point, the stories begin to diverge sharply. McGee testified that he was cuffed with his hands behind his back when Coley "struck me in the back of the head twice" and knocked him unconscious. He flatly denied attempting to assault Coley, adding that he was not able to do so because of the injuries incurred in the wreck.
 
 
 7
 McGee's relatives and neighbors corroborated his story. His wife, Kathy McGee (then his fiancee), said she saw Coley hit McGee and then saw other officers hitting and kicking him. Neighbor Lassiter saw Coley hit McGee in the back of the head and "I seen blood fly." He did not see McGee hit Coley, and he corroborated Mrs. McGee's story about the other officers beating him up. A friend, Vickie Smith, testified that she saw Coley hit McGee "three times at least" in the head after he had been handcuffed. Smith next saw McGee some six to seven hours later when he was released from jail and testified that McGee "was covered with blood ... [and] he was not able to walk and get into the car without help." It was at this point that McGee was taken to High Point Hospital for treatment. Medical testimony established that the injuries were consistent with blows to the head.
 
 
 8
 The essence of Coley's testimony, which was corroborated by fellow trooper Snodgrass, the two EMTs who transported McGee in the ambulance, and a nursing assistant at the hospital, was that McGee threw a punch as the trooper attempted to handcuff him and that Coley acted in self-defense in hitting him with his "convoy" or blackjack. Hospital personnel and local police also testified that McGee was "verbally abusive [and] very demanding" (EMT Rhodes); "uncooperative, very demanding ... He wanted to be treated first" (EMT Slack); "somewhat belligerent, cursing, kind of pacing ... appeared to be upset ... a little bit incoherent" (city police officer Norton).
 
 
 9
 McGee offered no rebuttal evidence, and Coley moved for judgment as a matter of law under Fed.R.Civ.P. 50(a). The district judge told McGee's counsel that his problem was that McGee never denied starting a fight with Coley and that "there's not any evidence in the record whatsoever to show that the officer did not act in good faith." McGee's lawyer responded that striking a handcuffed prisoner two or more times from behind with a convoy "flies in the face of good faith immunity with someone who's being arrested for a misdemeanor."
 
 
 10
 In a brief bench ruling, the court found that the evidence showed that McGee "was acting in a manner which was inconsistent with obeying the officer and submitting to arrest" and that McGee "was obligated, at least, to take the witness stand and deny the evidence of good faith that was presented by the defendant."[2] Because McGee did not offer rebuttal, the court ruled that
 
 
 11
 the good faith defense of the defendant has been established as a matter of law. There is not any indication from the plaintiff or his evidence that the defendant acted in an unreasonable manner.... The evidence is clear that the plaintiff had punched at the officer and caused other officers to be involved; and by reason of such, the Court will hold that the conduct of the defendant was not unreasonable.
 
 
 12
 We hold that the district court erred in granting judgment as a matter of law.
 
 II
 Fed.R.Civ.P. 50(a) reads in relevant part:
 
 13
 (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
 
 
 14
 A jury could, of course, find a constitutional violation where a police officer hit a non-resisting, handcuffed, recently injured prisoner on the back of the head a few times with a baton. See Graham v. Connor, 490 U.S. 386, 397 (1988) (prescribing the following inquiry in Fourth Amendment excessive force cases: "[W]hether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). McGee was not required to put on rebuttal evidence after Coley put on evidence that McGee had resisted arrest; McGee's case-in-chief anticipated Coley's self-defense theory, and anything offered in rebuttal would no doubt have been redundant.[3] We turn, then, to whether the evidence was sufficient to withstand the Rule 50 judgment.
 
 
 15
 Contrary to the district court's reasoning, whether McGee's evidence raised a genuine issue about resisting arrest is not dispositive. The critical question is, rather, whether a reasonable jury could have found that officer Coley used an unreasonable amount of force under the circumstances. Here, there was certainly evidence that McGee was handcuffed and was hit in the head from behind. There was also evidence of severe injuries from the blows to the head that were separable from the injuries incurred in the truck accident. Moreover, McGee had just been involved in a fairly serious accident and had not received treatment, yet he had just been informed that he was being charged with various traffic violations, that he could not choose his hospital, and that he was being taken downtown for a breath test. While the evidence that he was upset is fairly clear, where his actions fell on the scale--from agitated to resisting arrest to assault on an officer--is not. Added to the mix is how much force was used and how necessary it may have been in view of McGee's injured state and the presence of at least four other police officers. See Kopf v. Wing, 942 F.2d 265, 269 (4th Cir.1991) ("[E]ven if it found that force was necessary ..., a reasonable jury could nonetheless find the degree of force excessive."), cert. denied, 112 S.Ct. 1179 (1992).
 
 
 16
 Coley points to extensive impeachment evidence--McGee's prior convictions for assaulting police officers; inclusion of the injuries allegedly resulting from the convoy blows on his workman's compensation form; statements to his treating physician that his sleep difficulties resulted from the wreck, when he had been having the same problems for years--and argues that McGee's evidence is incredible in light of the entire record. After viewing the evidence in the light most favorable to McGee, however, we are of the opinion that McGee's story could be believed and, if believed, could be a "legally sufficient evidentiary basis" for a finding of liability.
 
 REVERSED AND REMANDED
 
 
 [1]
 According to McGee, he was found not guilty of the DWI and all other traffic-related charges
 
 
 [2]
 After Graham v. Connor, 490 U.S. 386 (1988), an objective test is used in Fourth Amendment excessive force cases. We read the district court's use of the term "good faith" to mean "self defense."
 
 
 [3]
 In his brief to this court, Coley makes a collateral estoppel argument that was not made during trial. During cross-examination, McGee admitted that he had pleaded guilty to a misdemeanor of resisting a law enforcement officer on July 2, 1990, and Coley argues that McGee was thereby estopped from arguing that he did not strike Coley. Federal courts are generally required to give preclusive effect to state court judgments if a state court would enforce such preclusion. Haring v. Prosise, 462 U.S. 306, 313-14 (1983). We need not decide the effect of the conviction here. Nothing in the record suggests that the resist-and-obstruct conviction necessarily included an attempted assault on the officer; indeed, as part of the plea bargain, an assault charge was dismissed. Not every use of force is justified once a prisoner resists arrest