**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 19 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

JOSEPH V. LIBRETTI, JR.,

      Plaintiff - Appellant,

v.

WYOMING ATTORNEY GENERAL,

      Defendant,

    and

TONY YOUNG, Wyoming Attorney
General Division of Criminal
Investigation Agent, in his official
capacity,

      Defendant - Appellee.

No. 02-8018
D.C. No. 94-CV-263-D
(D. Wyoming)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **BALDOCK** , and **LUCERO** , Circuit Judges.

---

* The case is unanimously ordered submitted without oral argument pursuant to
Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

Joseph V. Libretti, Jr., appearing pro se, appeals the district court's order granting summary judgment to defendants on his claims brought under 42 U.S.C. § 1983 and state law. Libretti alleges that defendants unconstitutionally obtained approximately $19,000 that belonged to him but had been held by his brother, who voluntarily turned it over to defendants. We affirm.

**I**

The district court thoroughly set forth the factual and procedural history of the present case. In October 1992, Libretti entered into a plea agreement in which he forfeited to the Division of Criminal Investigation ("DCI") any right to "all known assets as prescribed in 21 U.S.C. § 853 . . . up to $1,500,000," in exchange for a lighter sentence for his conviction of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 and for the dismissal of charges associated with his extensive illegal drug sales and distributions.

In February 1992, Libretti's brother William voluntarily turned over $19,000 to the DCI. William testified that he had received $48,000 from his brother in 1987, which he suspected was proceeds from illegal drug sales because (1) he knew Libretti had been involved with drugs, (2) the amount was in cash, (3) the transfer was secretive, and (4) the cash was placed in a safe deposit box in William's name. Libretti testified that he later asked William to invest the funds using William's social security number, which he did. Libretti also stated that he

derived the $48,000 "from selling designer drugs . . . [like] Ecstacy [and] Euphoria," (4 R. Doc. 97, Ex. 2 at 35), and admitted that he was also in the business of selling cocaine between 1984 and 1987.

William had returned some of the $48,000 to Libretti and had also spent some of it before he voluntarily turned over the remaining $19,000 to the DCI in February 1992. This $19,000 reflected the amount William deposited in various accounts under his name only. William disavowed any interest in this amount upon relinquishing it to the DCI. It is undisputed that the $19,000 was not the subject of any civil or criminal forfeiture proceedings, and that the money was not "seized," but rather was voluntarily transferred to the DCI by William, who was authorized to act as Libretti's agent with regard to the funds.

Although William's attorney asserted that a copy of both William's letter relinquishing the funds and the check made out to the DCI were sent to Libretti's attorney in February 1992, Libretti claims that he did not receive notice that William turned over the funds to the DCI. Based on this alleged lack of notice, Libretti filed the instant action in federal district court, arguing that he was deprived of the funds without due process, that the money was unconstitutionally "seized," and that his brother and defendant Young, in effect, "stole" the money from him.

Granting summary judgment in favor of defendant Young, the district court held that "Libretti gave up his rights to the $19,000 which his brother surrendered to DCI," in his plea agreement, "and therefore does not have standing to challenge its seizure or forfeiture." (7 R. Doc. 158 at 12–13 (citing United States v. Grover, 119 F.3d 850, 852 (10th Cir. 1997), and United States v. Le, 173 F.3d 1258, 1278–79 (10th Cir. 1999)).

## II

### A

Libretti maintains that, because the $19,000 was not itemized in the criminal forfeiture ordered against him on December 23, 1992, he did not forfeit this amount. Libretti's agreement to forfeit drug proceeds, however, covered more than the items listed in the subsequent order of criminal forfeiture. See United States v. Libretti, 38 F.3d 523, 526, 529–30 (10th Cir. 1994) (holding that Libretti's agreement to forfeit drug-related assets was voluntary and enforceable and rejecting the argument that Libretti agreed to forfeit only those assets listed in the indictment). In the plea agreement, Libretti voluntarily relinquished any proprietary right to all funds related "by reason of any drug transaction," up to $1.5 million, no matter when the transaction occurred or who possessed the funds, and no matter whether they were listed in future or previous forfeiture orders. In his 1992 criminal forfeiture proceeding, Libretti forfeited only $410,000,

id. at 531, and he cannot now claim that the $1.5 million limit was reached by that forfeiture.

**B**

Libretti also alleges that he did not know that the $19,000 had been turned over to the DCI when he entered into the plea agreement and therefore did not forfeit his right to that money in that agreement. Libretti did know, however, that he had deposited the drug-related funds with his brother at the time he signed the plea agreement, and that agreement expressly provided for voluntary forfeiture of his rights in "all known assets as prescribed in 21 U.S.C. § 853 . . . up to $1,500,000." (7 R. Doc. 158 at 7-8 (quotation omitted)). The district court properly ruled that, by forfeiting any right to drug-related funds up to $1.5 million, Libretti voluntarily relinquished his standing to claim that defendants' receipt of $19,000 from his brother violated his constitutional rights or that defendant Young "stole" the money.

Our decision in United States v. Libretti, No. 99-8047, 2000 WL 192944 (10th Cir. Feb. 17, 2000), does not dictate reversal of the district court based on Libretti's alleged lack of notice. That decision vacated Libretti's administrative forfeiture of money for lack of notice. [2] Id. at *3. We rejected the government's

---

[2] Administrative forfeiture is a statutory procedure allowing the government to seize property following notice to interested parties and the public. Id. at *1 n.1.

-5-

argument that the notice defect was "cured" by Libretti's plea agreement, and remanded for a determination of whether the statute of limitations on the administrative forfeiture was equitably tolled. Id. The issue of whether Libretti retained a property interest in the money adequate for standing purposes was not before us.

We have since explained that

deciding the merits of a forfeiture proceeding is not the same as determining whether a claimant under Rule 41(e) (or an equitable civil action based on that Rule) has met his burden [of establishing a lawful and equitable right to possession of property seized during criminal investigations]. In addition, "[c]ourts have little discretion in forfeiture actions," United States v. $3,799.00 in United States Currency , 684 F.2d 674, 677 (10th Cir. 1982), while a court hearing a motion for return of property has the discretion afforded courts in all equitable proceedings.

United States v. Clymore , 245 F.3d 1195, 1202 (10th Cir. 2001). Here, there was no need for a formal administrative forfeiture of the $19,000, as that amount had been voluntarily relinquished by Libretti's agent/brother. Thus, this case does not challenge the propriety of a formal administrative forfeiture, but rather raises the question of whether Libretti has standing to claim money voluntarily relinquished, when the nexus between the money and illegal drug sales has been conclusively determined and affirmed on appeal.

Neither Libretti nor William could claim a valid ownership interest in the illegal drug proceeds. Under § 881(a), "[n]o property right shall exist" in illegal

drugs or proceeds from selling illegal drugs. 21 U.S.C. § 881(a). Accordingly, § 881(a) applies to the $19,000 at issue here, and DCI had the right to maintain custody over the amount, "'subject only to the orders and decrees of the court.'" Clymore, 245 F.3d at 1200 (quoting 21 U.S.C. § 881(c)). Only two categories of owners could claim a superior interest to the DCI in the $19,000: "one whose constitutional right against an illegal search and seizure has been offended, . . . or an innocent owner." Id. Neither William nor Libretti fell into either category. Cf. United States v. $3,799.00 in U.S. Currency, 684 F.2d 674, 678 (10th Cir. 1982) (holding that a criminal defendant lacked standing to challenge forfeiture because he could not establish a sufficient proprietary interest in illegal gambling debt owed to him but voluntarily handed over to government by the debtor).

## C

Libretti's action was also properly dismissed as barred under the doctrine of res judicata. His forfeiture of all property rights and relinquishment of any claims regarding the allegedly illegal seizure of the $19,000 had already been raised and rejected in prior litigation.

On three separate occasions, we have held that Libretti voluntarily waived his prerogative to litigate his property right to assets covered by his plea agreement. In 1994, on direct appeal and in response to Libretti's arguments that he did not waive his right to jury trial on issues of forfeiture, we held that Libretti

intended in the plea agreement "to forfeit <u>all</u> of his property without requiring the government to prove the assets were forfeitable." <u>Libretti</u>, 38 F.3d at 529 (emphasis added). In 1996, we affirmed the district court's dismissal of Libretti's § 1983 suits alleging unreasonable searches and seizures by defendant Young, holding that his plea agreement "precluded relitigation of the search and seizure issues, including those by the state authorities." <u>Libretti v. Mecham</u>, No. 95-8073, 1996 WL 293822, at *1 (10th Cir. June 4, 1996). Finally, in 1998, we rejected Libretti's claims brought pursuant to Fed. R. Crim. P. 41(e) (or through other equitable civil proceedings), in which he sought return of "all property seized but not specifically listed in the December 23 order of forfeiture," concluding that Libretti's argument that he had agreed to forfeit only those assets listed in the indictment had already been rejected in his direct appeal. <u>United States v. Libretti</u>, Nos. 97-8039, 97-8044 & 97-8089, 1998 WL 644265, at *1, *6 (10th Cir. Sept. 9, 1998). This latest suit is simply another attempt to recover property covered by the plea agreement.

Contrary to Libretti's arguments, <u>Haring v. Prosise</u>, 462 U.S. 306 (1983), supports our conclusion. In <u>Haring</u>, the Court held that a guilty plea for manufacture of a controlled substance will not preclude, on collateral-estoppel grounds, a § 1983 suit for damages for an illegal search where "the legality of the search of [respondent's] apartment was not litigated in the criminal proceedings,"

"the criminal proceedings did not actually decide against [respondent] any issue on which he must prevail in order to establish his § 1983 claim," and "none of the issues in the § 1983 action could have been 'necessarily' determined in the criminal proceeding." Id. at 316. Haring acknowledged, however, that if, as here, an issue was addressed and necessarily determined in the underlying criminal proceeding, relitigation of the issue may be barred. Id. at 312–13 (citing Allen v. McCurry, 449 U.S. 90 (1980)). As we have repeatedly held, Libretti's voluntary forfeiture in 1992 of all assets related to illegal drug activity, which was critical to the state's acceptance of the plea agreement and therefore necessary to the judgment of conviction, precludes him from suing to recover that property.

Concluding that Libretti's appeal is frivolous, we **AFFIRM** the judgment of the district court.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

-9-