USCA1 Opinion

 

 November 8, 1995 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-2183  MICHAEL A. CROOKER, Plaintiff, Appellant, v. KENNETH VARRIALE, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Michael A. Ponsor, U.S. District Judge] ____________________ Before Torruella, Chief Judge, ___________ Cyr and Stahl, Circuit Judges. ______________ ____________________ Michael Alan Crooker on brief pro se. ____________________ Donald K. Stern, United States Attorney, and Karen L. Goodwin, _______________ _________________ Assistant United States Attorney, on brief for appellee. ____________________ ____________________ Per Curiam. Plaintiff, Michael A. Crooker, appeals the __________ grant of summary judgment in favor of the defendant, ATF Agent Kenneth Varriale, in this Bivens action, see Bivens v. ______ ___ ______ Six Unknown Named Agents, 403 U.S. 388 (1971), that ____________________________ challenged a November 1991 search of, and seizure of items from, Crooker's residence and a seizure of an additional item pursuant to a July 1992 search of that residence. The district court concluded that Crooker was collaterally estopped from asserting several of the Bivens claims. As to ______ those Bivens claims not precluded by collateral estoppel, the ______ district court determined that the items had been constitutionally seized as within the scope of the warrant, in plain view, and/or Agent Varriale was not liable as he was entitled to qualified immunity. Upon careful review, we conclude that summary judgment was appropriate on all counts; although as to certain counts, we affirm on grounds different from the district court. See ___ Four Corners Serv. Station, Inc. v. Mobil Oil Corp., 51 F.3d _________________________________ _______________ 306, 314 (1st Cir. 1995) (appellate court is free to affirm on any ground supported by the record). We pass the issue of collateral estoppel, affirming, instead, on an alternative ground of qualified immunity, the grant of summary judgment on the counts deemed precluded. As to the counts involving the November 1991 seizure of antique firearms and the July -2- 1992 seizure of ammunition, Crooker has failed to allege a violation of his own Fourth Amendment rights. I. The district court, in a comprehensive memorandum, dated October 26, 1994, explained the factual and procedural background. We set out an abbreviated version, outlining only those facts and the procedural history necessary to explain the basis for our determination. Crooker was released from prison in February 1991 after serving a 4-to-5 year state prison sentence for possession of a machine gun. Pursuant to a warrant, Agent Varriale searched Crooker's residence on November 8, 1991, for firearms, ammunition, and related material. Agent Varriale seized, among other things, several antique and non-antique firearms, numerous rounds of ammunition, an address book, a firearms record card, and firearms publications.1 Crooker was indicted on charges of being a felon-in- possession of firearms in violation of 18 U.S.C. 922(g). In this criminal proceeding, Crooker moved to suppress the  ____________________ 1. As noted in our opening paragraph, there was a second search of Crooker's residence conducted in July 1992. Pursuant to a separate warrant issued in the course of an IRS investigation of Crooker for filing false tax refund claims, Agent Varriale assisted IRS agents in executing the July 1992 warrant and seized ammunition from an antique firearm. In this Bivens action, Crooker does not contest the ______ issuance of the July 1992 warrant. He claims only that the July 1992 warrant did not authorize or encompass a seizure of that ammunition. -3- evidence seized in November 1991, arguing that the warrant had been issued without probable cause and that items seized were outside the scope of the warrant. The motion to suppress was denied by Chief Judge Tauro. Thereafter, in exchange for the dismissal of the felon- in-possession indictment, Crooker pled guilty to an information charging him with conspiracy to possess firearms by a felon, in violation of 18 U.S.C. 371. By the dismissal of the felon-in-possession indictment, Crooker avoided the imposition of a mandatory 15-year term of imprisonment. The parties agreed to, and Judge Tauro imposed, an eight-year sentence for the charge to which Crooker pled guilty. After pleading guilty in his criminal case, Crooker moved to lift a stay that had been entered in his earlier Bivens action against Agent Varriale. Some of the Bivens ______ ______ claims duplicated the allegations forming the basis for Crooker's suppression motion, i.e., that the application for the 1991 search warrant included deliberate false statements, that the 1991 search warrant was not supported by probable cause, and that the 1991 search exceeded the scope of the warrant. Relying on Allen v. McCurry, 449 U.S. 90 (1980) _____ _______ (collateral estoppel applies to 1983 actions), the district court determined in the Bivens action that Crooker was ______ collaterally estopped from relitigating the issues decided in -4- the suppression ruling previously entered in the criminal case. The district court granted summary judgment in favor of Agent Varriale as to the remaining Bivens claims, ______ concluding that the items which were the subject of these counts were lawfully seized or detained or that, in any event, Agent Varriale was entitled to qualified immunity. II. Crooker contends that the district court erred in concluding that he is collaterally estopped. He cites to Haring v. Prosise, 462 U.S. 306 (1983), for the proposition ______ _______ that entry of a guilty plea does not preclude a litigant from bringing a civil claim based on a Fourth Amendment violation arising out of the same set of operative facts. The Prosise _______ Court held, inter alia, that since a plea can be accepted on _____ ____ the basis of inadmissible evidence, the legality of a search is not "necessarily determined" by a guilty plea. Id. at ___ 316. We need not consider whether the issues raised by Crooker were precluded by any adjudication in the criminal case,2 because we affirm on alternative grounds -- namely  ____________________ 2. We note, however, that the Prosise Court stated that one _______ concern which animated its decision was the desire to preserve judicial resources. "The rule [rejected in Prosise] _______ would require an otherwise unwilling party to try Fourth Amendment questions to the hilt and prevail in state court in order to preserve the mere possibility of later bringing a  1983 claim in federal court." Prosise, 462 U.S. at 322. _______ Further, the Court noted that in the case before it, there was "no repetitive use of judicial resources and no possibility of inconsistent decisions that could justify precluding the bringing of such claims." Id. at 322 n.11. ___ -5- qualified immunity -- the district court's grant of summary judgment on the counts it deemed precluded. See Four Corners ___ ____________ Serv. Station, Inc., 51 F.3d at 314 (appellate court is free ____________________ to affirm on any ground supported by the record). Qualified immunity shields government officials performing discretionary functions from liability for civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable [police officer] would have known." Harlow v. ______ Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity __________ defense sweeps broadly, protecting "all but the plainly incompetent or those who knowingly violate the law." Hunter ______ v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. ______ ______ Briggs, 475 U.S. 335, 341 (1986)). As this court recently ______ explained, appellate assessment of a qualified immunity claim is apportioned into two analytic components. First, if the right asserted by the plaintiff was "clearly established" at the time of its alleged violation, we are required to assume that the right was recognized by the defendant official; second, we will deny the immunity claim if a reasonable official situated in the same circumstances should have understood that the challenged conduct violated that established right. Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir. _______ _______________ 1995) (quoting Burns v. Loranger, 907 F.2d 233, 235-36 (1st _____ ________  ____________________ Of course, Crooker's litigation of the suppression motion did require the expenditure of scarce judicial resources. -6- Cir. 1990) (citations omitted)). In the context of qualified immunity, summary judgment is warranted if the plaintiff fails to generate a trialworthy issue by undermining the evidence supporting the defendant officer's objectively reasonable belief that his actions were lawful. Dean v. ____ Worcester, 924 F.2d 364, 367 (1st Cir. 1991). _________ The rights which Crooker says were violated -- the right to be free from a search conducted pursuant to a warrant premised on deliberate misstatements, the right to be free from a search conducted pursuant to a warrant unsupported by probable cause and the right to be free from a search for items not adequately described in the warrant -- are clearly established. Franks v. Delaware, 438 U.S. 154, 164-65 (1978) ______ ________ (reciting that the Fourth Amendment demands a factual showing sufficient to comprise probable cause and demands that it be a truthful showing); Krohn v. United States, 742 F.2d 24, 26 _____ _____________ (1st Cir. 1984) (same); Berger v. New York, 388 U.S. 41, 55 ______ ________ (1967) (reciting the Fourth Amendment's requirement that a warrant particularly describe the things to be seized); United States v. Morris, 977 F.2d 677, 681 (1st Cir. 1992) ______________ ______ (same), cert. denied, 113 S. Ct. 1588 (1993). Consequently, ____________ our analysis turns on whether a police officer in Agent Varriale's position reasonably could have believed that his actions did not violate those rights. As regards the actions surrounding the 1991 search warrant, an objectively -7- reasonable officer could have believed that Varriale's actions did not violate clearly established law. Crooker contends that the following statement, submitted by Agent Varriale in support of the 1991 warrant application, was deliberately false: In my experience, it is common for individuals who are prohibited from legally possessing firearms--but who wish to do so illegally--to have a household or family member or associate who is properly licensed to possess firearms, make purchases of firearms and ammunition which are then in fact used by the prohibited person. In this way persons who are prohibited from legally possessing firearms are able to possess firearms without creating any record of transactions in their name. Based on my training and experience, I believe that such a ruse is likely where, as here, significant amounts of ammunition are being received through mail orders and the purchasing party need not appear in person. Crooker argues that this statement is false because it is not "common" for prohibited individuals to buy firearms and ammunition through family members and that the amount of ammunition bought was not "significant." He proposed to demonstrate that such schemes were not "common," by comparing the large number of lawful gun owners in the United States with the small number of "straw-purchasing" schemes detected each year by law enforcement.3 And he contended that the  ____________________ 3. Crooker neither produced such data, nor requested additional time within which to do so. See Fed. R. Civ. P. ___ 56(f). -8- amount of ammunition purchased could not be termed "significant" when compared with the 2,000 - 6,000 pounds of ammunition Crooker's supplier shipped daily. Crooker's claims fall far short of generating a trialworthy dispute as to whether Agent Varriale deliberately supported his warrant application with false information. Rather, his argument amounts to little more than a semantic game. Crooker produced absolutely no evidence to refute the statement that Agent Varriale, based on his experience, considered firearms purchases by close family members to be a common method by which prohibited individuals attempt to acquire firearms illegally. A law enforcement officer, with experience in such matters, could reasonably conclude that a particular pattern of criminal behavior was "common" without undertaking a statistical analysis encompassing all firearm purchases in the United States. And a reasonable officer reasonably could conclude that the fifty-one boxes of ammunition which were delivered to Crooker's residence during the previous four months represented a "significant" amount of ammunition. Crooker's second claim is that the search of his premises violated the Fourth Amendment because the 1991 search warrant was not supported by probable cause. Once again, we inquire whether a reasonable officer, in Agent -9- Varriale's position, reasonably could have believed that a search did not violate Crooker's rights. In United States v. Leon, 468 U.S. 897 (1984), the _____________ ____ Supreme Court held that evidence seized under an invalid warrant, believed in good faith to be valid by the officers who executed it, should not be suppressed under the exclusionary rule. Leon explicitly noted that the standard ____ of "objective reasonableness" used in assessing a qualified ____ __ _________ _ _________ immunity defense should be used to determine when evidence ________ _______ seized under a technically invalid warrant, should be excluded. Id. at 922. The Court stated, ___ [I]n most such cases, there is no police __ ______ illegality and thus nothing to deter. . . __________ . In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.' Stone _____ v. Powell, 428 U.S. 465, 498 (1976) ______ (Burger, C.J. concurring). Id. at 921 (emphasis added). ___ In Malley v. Briggs, 475 U.S. 335 (1986), the Court made ______ ______ clear that the Leon analysis serves as well in the qualified ____ immunity analysis applicable to police officers in the position of Agent Varriale. [W]e hold that the same standard of objective reasonableness that we applied in the context of a suppression hearing in Leon, [468 U.S. 897 (1984),] defines ____ the qualified immunity accorded an -10- officer whose request for a warrant allegedly caused an unconstitutional arrest. Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, Leon, [468 U.S.] at 923, will the shield ____ of immunity be lost. Id. at 344-45 (footnote omitted). ___ The Leon Court set forth three circumstances wherein ____ good-faith reliance upon a neutral magistrate's probable cause determination could not be found. First, in circumstances where the police submitted affidavits in support of the warrant application, which they knew, or should have known, were false. Id. at 923. The affidavit ___ submitted in support of the 1991 search warrant contained no such statements. Second, the police cannot place good-faith reliance upon a warrant issued by a magistrate who has "wholly abandoned his judicial role." Id. There is no such ___ suggestion in this case. Third, the police cannot assert good-faith reliance on a warrant issued on the basis of an application which was "so facially deficient -- i.e., in ____ failing to particularize the place to be searched or the things to be seized -- that the executing officers cannot reasonably presume it to be valid." Id. The 1991 warrant ___ issued for Crooker's residence was entirely regular on its face. Consequently, in executing the 1991 warrant Agent Varriale was entitled to place good-faith reliance upon the -11- search warrant, as an objectively reasonable basis for executing the warranted search of Crooker's residence. Crooker's third claim is that the search conducted by Agent Varriale exceeded the scope of the warrant. The warrant authorized a search for "ammunition and firearms, possession of which constitute a violation of Title 18, United States Code, Section 922(g), firearms maintenance equipment, records of purchases, deliveries and receipts of firearms and ammunition, including invoices, bills of sale . . . and correspondence which constitute evidence of violation of [18 U.S.C. 922(g)]." Crooker first contends that seizure of the modern firearms was outside the scope of the warrant, because Agent Varriale did not have probable cause to believe that the firearms actually belonged to him (and hence were possessed in violation of 922(g)) and not Susan Bartnicki, with whom he was living at the time of the November 1991 search (and who was not barred from possession by 922(g)). Nonetheless, a reasonable officer could reach the conclusion that the firearms were possessed by Crooker based upon 1) the fact that Crooker had signed for and tendered the payment for ten boxes of ammunition, 2) the fact that the firearms were within Crooker's residence and 3) the fact that the key to the gun safe was hanging in Crooker's bedroom. -12- Crooker also contends that the seizure of antique firearms was outside the scope of the warrant, because they are not within the purview of 922(g). See 18 U.S.C.  ___ 921(a)(3), (16) (defining antique firearms and exempting same from definition of "firearms" regulated under 922). We affirm summary judgment for Agent Varriale on this count because, in any event, Crooker did not allege any violation of his Fourth Amendment right with respect to the seizure of ___ the antique firearms. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Alderman v. United States, 394 ________ ______________ U.S. 165, 174 (1967). The Fourth Amendment's prohibition against unreasonable seizures protects a possessory interest in property. "[A] seizure deprives the individual of dominion over his or her person or property." Horton v. ______ California, 496 U.S. 128, 133 (1990).4 Although Crooker has __________ claimed that, even as a convicted felon, he may lawfully own and possess antique firearms, he alleged in the Bivens "Third ______ Amended Complaint" that the particular antique firearms seized pursuant to the November 1991 warrant belonged to  ____________________ 4. Of course, the Fourth Amendment also protects against unreasonable searches. "A search compromises the individual interest in privacy." Horton, 496 U.S. at 128. Crooker had ______ a legitimate expectation in the privacy of his home. As the searching officers had a valid search warrant and discovered the antique firearms during the course of, and within the permissible scope of, their authorized search for modern firearms, however, Crooker's privacy interest was not violated. -13- Bartnicki, who is not a party to this complaint. Similarly, Crooker may not complain about the seizure of the ammunition taken from an antique firearm during the course of the July 1992 search as he has alleged that that firearm and ammunition belonged to Bartnicki.5 As to the remaining items seized under the 1991 warrant, we agree with the district court.6 The address book and the firearms record card and handwritten notes were either within the scope of the warrant authorizing the seizure of "records of purchases, deliveries and receipts of firearms and ammunition, including . . . correspondence which constitute evidence of violation of Title 18, United States Code, Section 922(g)" or legitimately seized as being within "plain view." We further agree that, in any event, Agent Varriale was entitled to qualified immunity because a reasonable officer in Varriale's position could so believe. Similarly, we conclude that the legal papers and firearms publications (counts which the district court found barred by collateral estoppel) were constitutionally seized as within the scope of the warrant, in plain view, or that, in any event, Agent Varriale is entitled to qualified immunity.  ____________________ 5. Crooker was never charged in his criminal proceeding with the unlawful possession of any of the antique firearms seized in November 1991 or the ammunition seized in July 1992. 6. We also agree with the district court's conclusion with respect to Crooker's complaint about the detention of a package from Shooter's Equipment Company. -14- Finally, although not raised as a separate count in his Bivens complaint, during the course of the district court ______ proceedings Crooker complained about the retention of items seized. Whether Agent Varriale was personally responsible __________ for the retention of the items and had authority to order the _________ return of items taken in the search and, thus, is the proper defendant with respect to such a claim is of some doubt. See, e.g., Go-Bart Co. v. United States, 282 U.S. 344, 354-55 _________ ___________ _____________ (1931) (reciting that because the United States Attorney had control of the prosecution, the papers seized were held subject to his control and direction, although in the immediate care and custody of the officer who seized them); Thompson v. Williamson, 962 F.2d 12 (8th Cir. 1992) ________ __________ (unpublished per curiam) (affirming summary judgment in Bivens action seeking return of property in favor of FBI ______ agent who alleged that he could not release property without approval of AUSA). In any event, Crooker has not been clear as to which items he refers. He, of course, is not entitled to the return of any contraband. And, insofar as Crooker is referring to the antique firearms seized in November 1991 and the ammunition seized in July 1992, Crooker's failure to establish that he is the rightful owner, see supra, defeats ___ _____ this claim. Finally, insofar as he may be referring to personal papers, Crooker now states that his property has -15- been returned. We conclude, therefore, that this claim is moot. Affirmed. _________ -16-