FILED
**United States Court of Appeals**
**Tenth Circuit**

**September 5, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CARL BUCK,

      Plaintiff-Appellant,

v.

CF&I STEEL, L.P.,

      Defendant-Appellee.

No. 13-1017
(D.C. No. 1:11-CV-02801-WYD-CBS)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **BALDOCK**, and **GORSUCH**, Circuit Judges.

At his employer's insistence, Carl Buck submitted to a randomized drug test, and the results weren't good. In fact, the lab determined that Mr. Buck had likely tampered with the sample he turned in. That led his employer, CF&I Steel, L.P., to terminate his employment, and that led Mr. Buck to initiate this lawsuit. Ultimately, the district court granted the employer's motion for summary judgment, and it is this result Mr. Buck now appeals.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

When Mr. Buck underwent the drug test, he submitted what was supposed to be a sample of his urine. But the lab reported back, "INVALID RESULT: Abnormal Physical & Chemical Characteristics which may include one or more of the following: no uric acid, no urine odor, abnormal appearance, or no foaming." Aplt. App. at 132. Interpreting this report as evidence that Mr. Buck had faked or adulterated his urine sample, CF&I Steel issued him a provisional discharge for refusing to cooperate with the company's drug testing efforts. *Id.* at 88. Under the collective bargaining agreement, an employee's "refusal to cooperate regarding the collection of samples" is indeed grounds for a provisional discharge. *Id.* at 78. Before notifying Mr. Buck of the provisional discharge, however, CF&I Steel had him take a second test, just three days after the first. Several weeks later, the results of the second drug test came back positive for methamphetamine. But it is the alleged tampering with the first test that the company cited to support its decision to let Mr. Buck go, for under the terms of the collective bargaining agreement failing to pass an initial drug test would not have warranted termination, but instead a second chance.

Because Mr. Buck's discharge for tampering with the first sample was provisional, his union was able to appeal it by requesting a grievance hearing, and it did. At the hearing, the union insisted that Mr. Buck should be sent to treatment rather than terminated. The company disagreed and denied the grievance. The union next appealed that denial and arranged a second hearing with the company. This

time, the union stressed that the first drug test results hadn't identified what was in the sample that Mr. Buck provided, and argued that a sample isn't necessarily adulterated just because the lab labels it invalid. Once again, the company denied the grievance, citing lab evidence that the sample wasn't human urine and claiming that Mr. Buck had confessed to adulterating the sample. After one final meeting with the company, the union decided not to take the matter to arbitration and dropped the grievance. This suit followed.

Mr. Buck challenges his termination using section 301 of the Labor Management Relations Act of 1947, now codified at 29 U.S.C. § 185. The particular claim he brings is known as a hybrid claim because it is based on both an alleged breach of the employer's collective bargaining agreement and an alleged breach of the union's duty to represent the employee fairly. To prevail on a hybrid § 301/duty of fair representation claim, Mr. Buck must prove "(1) Some conduct by the worker's union that breached the duty of fair representation; (2) A causal connection showing that the union's breach affected the integrity of the arbitration process, and; (3) A violation of the collective bargaining agreement by the company." *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1239 (10th Cir. 1998). At summary judgment, the district court could find no genuine issue of material fact to support a possible breach of the union's duty of fair representation. Neither can we.

A union breaches its duty of fair representation when it "acts in a discriminatory, dishonest, arbitrary, or perfunctory fashion." *Id.* at 1239. Mr. Buck

focuses on the third and fourth possibilities.  To be arbitrary, however, the union's decision must fall "so far outside the wide range of reasonableness accorded union representatives as to be irrational." *Young v. UAW Labor Emp't & Training Corp.*, 95 F.3d 992, 998 (10th Cir. 1996) (brackets and internal quotation marks omitted). And a union handles a claim in a perfunctory manner by "act[ing] without concern or solicitude, or g[iving] a claim only cursory attention." *Webb*, 155 F.3d at 1240 (internal quotation marks omitted).  Mr. Buck does not identify any facts that suggest the union might have come close to any such failing.  Rather, he explains why, in his judgment, his claim was a good one, and he faults the union for not sharing his view. Aplt. Reply Br. at 7-8.  As we have said before, though, that it is not enough.  We will not replace "the Union's good faith, nondiscriminatory judgment in assessing and presenting its members' grievances" with our own second guesses.  *Young*, 95 F.3d at 997.

Mr. Buck suggests that a union automatically breaches its duty of fair representation when it fails to provide a convincing and contemporaneous explanation to the employee for its failure to pursue his claim in the manner the employee wishes.  And that the union does so no matter how rational and thoughtful that decision may prove to be.  But there is no such requirement in the statute or our case law.  To be sure, Mr. Buck cites a Ninth Circuit case that stated as follows:  "If a union provides an explanation for having ignored a particularly strong argument during a grievance procedure that is based on reasoning, we will not question

whether the reasoning was faulty or not." *Peters v. Burlington N. R.R. Co.*, 931 F.2d 534, 540 (9th Cir. 1990). But Mr. Buck reads too much into this statement. The court went on to fault the union for offering no explanation *to it*, and not the affected employee. *See id.* at 541. Nowhere does *Peters* mandate the sort of contemporaneous explanation Mr. Buck supposes.

The judgment of the district court is affirmed.

Entered for the Court

Neil M. Gorsuch
Circuit Judge