**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4638

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KYRIE RASHAUD THOMPSON,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paula Xinis, District Judge.  (8:19-cr-00604-PX-1)

Argued:  December 11, 2024                                         Decided:  August 22, 2025

Before NIEMEYER, KING, and BENJAMIN, Circuit Judges.

Affirmed in part and dismissed in part by unpublished opinion.  Judge Benjamin wrote the opinion, in which Judge Niemeyer and Judge King joined.

**ARGUED:**  Cullen Oakes Macbeth, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  David Christian Bornstein, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant.  Erek L. Barron, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DEANDREA GIST BENJAMIN, Circuit Judge:

Kyrie Rashaud Thompson pleaded guilty to kidnapping and attempted witness tampering without a plea agreement. Despite his unconditional plea, Thompson now seeks to challenge the district court's denial of his earlier motion to suppress, as he claims the district court misadvised him about the scope of his appellate rights. He also challenges his sentence based on alleged discrepancies between the oral and written conditions of his supervised release. Finding no error, we affirm the district court court's judgment and dismiss the portion of Thompson's appeal challenging the district court's denial of his motion to suppress.

## I.

We begin by addressing Thompson's guilty plea and his challenge to the district court's denial of his motion to suppress.

## A.

In a signed letter, Thompson informed the district court that he intended to plead guilty to kidnapping and attempted witness tampering, in violation of 18 U.S.C. §§ 1201 and 1512, respectively. J.A. 381.[1] The letter explained the rights Thompson would have

---

[1] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the district court. Page numbers refer to the "J.A. #" pagination.

if he proceeded to trial and acknowledged that "[b]y pleading guilty, the Defendant [would] be giving up all of these rights, except the right to appeal the sentence." *Id.* 382–83.

At Thompson's change-of-plea hearing, the district court explained that, though a defendant who is convicted at trial "has an unlimited right to appeal[,] raising any error that the defendant believes was committed during the trial or before the trial without restriction[,]" "when [a defendant] plead[s] guilty [he] give[s] these rights up." *Id.* 401–02. Thompson confirmed that he understood the rights he was giving up. *Id.* 402. The court then explained:

> [I]f you are pleading guilty without an agreement with the Government you are not giving up any rights of appeal. In other words, at the sentencing you will be able to appeal any sentence that's imposed or any other underlying ruling that the judge made in the case because you are not giving up your rights of appeal.

*Id.* 403. Thompson confirmed that he understood, and the court reaffirmed that "[t]hose [rights] are reserved." *Id.* 404. Neither party objected.[2] *Id.* 404–10. On appeal, Thompson seeks to challenge the district court's denial of his motion to suppress.

## B.

"[A] guilty plea must be both knowing and voluntary" because it "constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's

---

[2] After accepting Thompson's unconditional plea, the district court also told Thompson he had "an unlimited right to invoke any appeal that [he] believe[d] [was] appropriate." J.A. 418. But a statement made after a defendant has pleaded guilty necessarily cannot influence the defendant's decision to plead guilty. *See, e.g.*, *United States v. Rodgers*, 595 F. App'x 196, 200 n.3 (4th Cir. 2014) ("[S]tatements [that] were made . . . after [the defendant] had already entered his unconditional guilty plea . . . could not have motivated him in entering the plea.") (per curiam).

3

accusers, and the privilege against self-incrimination." *Parke v. Raley*, 506 U.S. 20, 28–29 (1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969)).  Through a plea agreement, a defendant may also waive their right to appeal.  *United States v. Manigan*, 592 F.3d 621, 627 (4th Cir. 2010) (citing *United States v. Poindexter*, 492 F.3d 263, 267–68 (4th Cir. 2007)).  But although "a guilty plea [also] results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence obtained in violation of the Fourth Amendment[,] . . . a guilty plea is [not] a 'waiver' of antecedent Fourth Amendment claims[.]" *See Haring v. Prosise*, 462 U.S. 306, 320–21 (1983) ("The defendant's rights under the Fourth Amendment are not among the trial rights that he necessarily waives when he knowingly and voluntarily pleads guilty.").

Instead, "a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it *quite validly* removes the issue of factual guilt from the case." *Id.* at 321 (quoting *Menna v. New York*, 423 U.S. 61, 62–63 n.2 (1975)).  In doing so, a valid guilty plea "renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." *Class v. United States*, 583 U.S. 174, 182 (2018).

## C.

Thompson argues that *United States v. Manigan*, 592 F.3d 621 (4th Cir. 2010), which discusses a defendant's waiver of his right to appeal his conviction and sentence, "controls this case."  Appellant's Br. (ECF No. 16) at 35 (hereinafter "Opening Br.");[3]

---

[3] Citations to the parties' briefs use the page numbers generated by CM/ECF.

*Manigan*, 592 F.3d at 625.  He argues that because the district court misadvised him that he retained "an unlimited right" to appeal, his "waiver" of his appellate rights was not knowing and intelligent, and so was invalid.  *Id.* at 33–36.  As a remedy, he suggests that this court "should analogize this case to the conditional-plea context" to allow him to pursue his Fourth Amendment challenge.  *Id.* at 37, 54–55.

The Government argues that *Manigan* is inapposite because, unlike in *Manigan*, Thompson is attempting to challenge a motion to suppress rather than his sentence, and so there is no "waiver" to contest.  Appellee's Br. (ECF No. 32) at 32 (hereinafter "Resp. Br.") (quoting *Haring*, 462 U.S. at 321).  It argues that treating Thompson's plea as conditional would be improper for a variety of reasons, including that "there is no basis to conclude [Thompson] ever thought he was entering a conditional plea," let alone relied on that belief to plead guilty, *id.* at 27; the court's alleged "misadvisement" was at most "ambiguous," especially in light of the court's other statements and Thompson's letter, *id.* at 27–28; and there was no express "reservation of rights" or "unequivocal government acquiescence" to the guilty plea.  *Id.* at 29–31 (quoting *United States v. Fitzgerald*, 820 F.3d 107, 110–13 (4th Cir. 2016)).  Finally, the Government argues that based on Thompson's "valid unconditional guilty plea," we should "deny his [Fourth Amendment] challenge[.]" *Id.* at 33–34 .

### D.

We agree with the Government.  There is no "waiver" here for Thompson to challenge as invalid.

5

As a preliminary matter, Thompson has waived his ability to challenge the validity of his plea. In his Reply Brief, Thompson argues he has not waived his ability to challenge the validity of his plea. He claims that his challenge to the validity of his appellate waiver in his Opening Brief "clearly set out [his] view that his guilty plea was not 'valid[.]' " Reply Br. at 11. But challenges to appellate waivers and their underlying plea agreements are not interchangeable. This court has found defendants' appellate waivers invalid while upholding defendants' guilty pleas. *See, e.g.*, *Manigan*, 592 F.3d at 628, 632 (affirming defendant's sentence and leaving plea intact after finding appellate waiver invalid); *see also United States v. Smith*, 134 F.4th 248, 260 (4th Cir. 2025) ("[T]he proper remedy for an invalid appeal waiver is to sever the appeal waiver from the remainder of the plea agreement and relieve the defendant of the waiver."). So because Thompson failed to explicitly challenge the validity of his unconditional plea in his Opening Brief, he has waived the issue. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (quoting *Brown v. Nucor Corp.*, 785 F.3d 895, 923 (4th Cir. 2015)) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.") (cleaned up).

Having determined that Thompson waived this issue, we turn to Thompson's arguments about the validity of any appellate waiver. When Thompson pleaded guilty, he admitted his factual guilt. *See Haring*, 462 U.S. at 321. This rendered any Fourth Amendment challenge "irrelevant" because his conviction is grounded in that admission, not in the Government's evidence. *See id.* While Thompson has lost his chance to bring a Fourth Amendment challenge, that loss "is [not] a 'waiver' of antecedent Fourth

6

Amendment claims." *See id.* at 320. The loss is simply the logical endpoint of any "validly established" admission of guilt. *See id.* at 321. All this to say, Thompson has no Fourth Amendment appellate waiver to challenge. And because there is no appellate waiver to challenge, *Manigan* does not apply. *See* 592 F.3d at 627–28. So Thompson is left with his unconditional plea—and without the ability to bring his Fourth Amendment challenge.

We therefore dismiss Thompson's appeal of the district court's denial of his motion to suppress. *See Fitzgerald*, 820 F.3d 107 (quoting *United States v. Bundy*, 392 F.3d 641, 645 (4th Cir. 2004)) ("Absent a valid conditional guilty plea, we will dismiss a defendant's appeal from an adverse pretrial ruling on a non-jurisdictional issue.").

## II.

We turn next to Thompson's sentence.

### A.

Thompson's presentence report ("PSR") contained, among others, the following two conditions of supervised release.

> You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment[.] . . .
> You must submit to substance abuse testing to determine if you have used a prohibited substance. . . . You must not attempt to obstruct or tamper with the testing methods.

7

S.A.[4] 592–93.  At the sentencing hearing, the district court asked Thompson whether he had "reviewed the standard and the mandatory conditions of supervision which were in the [PSR] with [his] counsel[.]"  J.A. 430.  Thompson confirmed that he had reviewed and understood those conditions.  *Id.*

After imposing its sentence, the district court incorporated the PSR's description of the probation office to which Thompson would report.  J.A. 500; S.A. 592.  It also announced to Thompson that he "must submit to substance abuse testing."  J.A. 500.  Though the written judgment of conviction contained the condition about the federal judicial district where the defendant is "authorized to reside," it also contained the following conditions:

> The defendant shall report to the probation office in the district *to which the defendant is released* within 72 hours of release from the custody of the Bureau of Prisons. . . .
> You must submit to substance abuse testing to determine if you have used a prohibited substance.  *You must not attempt to obstruct or tamper with the testing methods*.

J.A. 510–11 (emphasis added).

### B.

We review "the consistency of [the] oral sentence and the written judgment de novo, 'comparing the sentencing transcript with the written judgment to determine whether an error occurred as a matter of law.' "  *United States v. Rogers*, 961 F.3d 291, 296 (4th Cir. 2020) (quoting *United States v. Johnson*, 765 F.3d 702, 710 (7th Cir. 2014)).

---

[4] Citations to "S.A." refer to the sealed joint appendix filed by the parties.

8

"[A] district court [must] orally pronounce all discretionary conditions of supervised release at the sentencing hearing." *United States v. Mathis*, 103 F.4th 193, 197 (4th Cir. 2024) (first citing *United States v. Singletary*, 984 F.3d 341, 344 (4th Cir. 2021); and then citing *Rogers*, 961 F.3d at 296–99). "Discretionary conditions that appear for the first time in a subsequent written judgment . . . are nullities; the defendant has not been sentenced to those conditions, and a remand for resentencing is required." *Id.* (alteration in original) (quoting *Singletary*, 984 F.3d at 344). "[A] *material* discrepancy between a discretionary condition as pronounced and as detailed in a written judgment may [also] constitute *Rogers* error." *Id.* (emphasis added) (quoting *United States v. Chance*, No. 20-4525, 2023 WL 2784869, at *2 (4th Cir. Apr. 5, 2023)) (collecting cases). That said, a written condition which merely clarifies, explains, or spells out the details of the orally pronounced condition is not necessarily inconsistent. *See id.* at 197.

## C.

Thompson argues that either of the discrepancies between the oral and written discretionary conditions would entitle him to full vacatur and remand under *Rogers*. Regarding the first condition, Thompson argues that this court "has granted *Rogers* relief in materially identical circumstances."[5]  Opening Br. at 59.  Regarding the second

---

[5] Thompson also argues that since, as in *United States v. Reyes*, No. 23-4598, 2024 WL 4381162 (4th Cir. Oct. 3, 2024) (per curiam), he " 'strongly contests the Government's proffered explanation' of why no conflict exists," we must remand the case for a full resentencing.  Appellant's Supp. Authorities (ECF No. 48) at 2.  But the court's language in *Reyes* did not establish the conditions' inconsistency—it merely distinguished *United States v. Cisson*, 33 F.4th 185 (4th Cir. 2022), which the Government had argued established that the conditions at issue were not in conflict.  Appellee's Br. (ECF No. 26) (Continued)

condition, Thompson argues that a "no tampering" requirement is inconsistent with requiring him to "submit" to substance-abuse testing because one may "submit" to testing without demonstrating "perfect compliance with the rules" of that testing. *Id.* at 59–60; Reply Br. (ECF No. 39) at 45–46.

The Government argues that the inconsistencies between the oral and written conditions are not reversible *Rogers* error because the dissimilarity is only facial. By the Government's account, "(1) the federal judicial district in which Thompson is 'authorized to reside' is the one to which he is 'released' and (2) a defendant does not 'submit to substance abuse testing' when he 'attempt[s] to obstruct or tamper with the testing methods.' " Resp. Br. at 48 (alteration in original) (citations omitted).

## D.

Neither facial discrepancy is *Rogers* error. We address each condition in turn.

## 1.

Thompson's oral and written conditions about the probation office to which he must report are consistent. Bureau of Prisons policy states that defendants "should be released to [districts] where they have the greatest likelihood of a successful . . . adjustment" to the

---

at 21–25; *compare Cisson*, 33 F.4th at 194 (finding no inconsistency between oral and written conditions because defendant "waived any possible response to the Government's proffered explanation"), *with Reyes*, 2024 WL 4381162, at *1 ("Therefore, unlike in *Cisson*, where we upheld facially dissimilar supervised release conditions because the defendant did not contest the Government's proffered explanation for why the conditions were consistent, . . . here, we may not *disregard* the differences between the oral and written descriptions of the probation district to which Reyes must report." (emphasis added)).

10

community they join.  FED. BUREAU OF PRISONS, Unit Management Manual: Program Statement No. 5321.08 11 (Aug. 10, 2017), https://perma.cc/B3T7-UAXA.  Where the defendant plans—and so would need to be authorized—to reside is inherently part of that determination.  *See id.* at 11–12.  In the same vein, the Administrative Office of the U.S. Courts notes that "[u]nder 18 U.S.C. § 3624(c)(1)–(2), the Bureau of Prisons shall, to the extent practicable, ensure that an inmate spends a portion of the final months of the term of imprisonment under conditions (including in home confinement or at a residential reentry center) that will afford the inmate a reasonable opportunity to adjust to and prepare for reentry into the community"—again, meaning the community in which he will reside. ADMIN. OFF. OF U.S. COURTS, Overview of Probation & Supervised Release Conditions 15 n.14 (July 2024), https://perma.cc/3BQM-KLWX; *see also id.* at 14–16 (detailing practices surrounding initial report to probation office).

Put plainly, "the district to which [a defendant] is released and the district where he is authorized to reside are one and the same." *See United States v. Williams*, No. 21-10015, 2022 WL 636681, at *1 (5th Cir. Mar. 4, 2022), *cert. denied*, 143 S. Ct. 159 (2022). Because the additional language about "the district to which a defendant is released" does not "outlin[e] an additional obligation" beyond the condition agreed to, it does not "impose[] a new condition" and is not *Rogers* error. *See Mathis*, 103 F.4th at 198; J.A. 510.

2.

Thompson's oral and written conditions about submission to drug testing are also consistent.  Unlike "participation," which merely requires an individual "to take part" in

11

an activity, *United States v. Cohen*, 63 F.4th 250, 254 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 165 (2023), "submission" requires an individual to "yield to authority." *See Submit*, Merriam-Webster, https://perma.cc/TV36-HJKK.     To "yield" to the Government's authority means "to give up and cease resistance" to the test—a compliance requirement unlike that required by participation. *Compare Cohen*, 63 F.4th at 254 (holding that participation does not require "perfect compliance"), *with Buck v. CF&I Steel, L.P.*, 531 F. App'x 936, 937 (10th Cir. 2013) (plaintiff who "tamper[ed] with the [employer's] [drug] test" by submitting an "adulterated . . . urine sample" could be discharged for "refusal to cooperate" with the test).

A defendant who obstructs or tampers with a drug test resists the Government's authority in administering that test, meaning he fails to "submit." *Cf., e.g.*, *United States v. Degroate*, 940 F.3d 167, 177–78 (2d Cir. 2019) (defendant admitted to "tampering with his electronic monitoring device in violation of the condition that he submit to electronic monitoring"); *United States v. Sealey*, 30 F.3d 7, 10 (1st Cir. 1994) (suspect who resisted officer, ran away, and refused questioning did not "submit" to officer's inquiry); *Buck*, 531 F. App'x at 937.   Thus, the additional sentence prohibiting obstruction and tampering is not inconsistent with the orally announced condition: it explains the meaning of the condition, which is not *Rogers* error. *See Mathis*, 103 F.4th at 198.

In sum, both of Thompson's *Rogers* challenges are without merit.

12

III.

For these reasons, we affirm the district court court's judgment and dismiss the remainder of Thompson's appeal.

*AFFIRMED IN PART,*
*DISMISSED IN PART*